## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FAIR HAVEN DEVELOPMENT CORPORATION | : | NO. 3:02CV02130 (AWT) |
|     Plaintiff | : | |
| | : | |
| V. | : | |
| | : | |
| JOHN DESTEFANO, ET AL. | : | |
|     Defendants | : | MARCH 5, 2007 |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56, defendant, the John DeStefano, et al submits this memorandum in support of its motion for summary judgment. There is no genuine dispute as to any of the material facts, and the defendants are entitled to judgment as a matter of law.

**I. PROCEDURAL HISTORY**

On or about December 3, 2002, the plaintiff brought an action against defendants, John DeStefano, Julio Gonzalez, Andrew Rizzo and the City of New Haven claiming violation its procedural and substantive due process rights, equal protection rights and first amendment rights of freedom of speech and freedom of association. The basis for its claims is that the defendants conspired to wrongly withhold certain federal funds it was entitled to without a hearing, subjecting it to disparate treatment.

The plaintiff brought a second action on June 16, 2003, against defendants John DeStefano, Andrew Rizzo and the City of New Haven claiming that the defendants failed

to transfer certain real estate to FHDC. FHDC claims that when the City did not transfer those properties, it was due to the defendants' violation of the plaintiff's equal protection rights and first amendment rights of freedom of speech and freedom of association.

In fact, the City withheld $95,000.00 in Community Development Block Grant (hereinafter "CDBG") funds that had been approved for payment to the plaintiff by the Board of Aldermen pursuant to an investigation into accusations that FHDC had improperly used federal funds in the past, and the City refused to transfer the property to FHDC because FHDC had failed to comply with FHDC's previous Land Development Agreements with the City for the development of other properties.

## II.     UNDISPUTED MATERIAL FACTS

### A.  CDBG Funding Process

The City through LCI is entrusted by the City and the U.S. Department of Housing and Urban Development to effectively and efficiently administer Federal Programs and to monitor and evaluate sub-recipients of federal Community Development Programs including the Community Development Block Grants, the funds that are the subject of this action. (Rizzo Aff., Ex.1).

The plaintiff applied for Community and Development Block Grant Funding from the City of New Haven for Fiscal Years 2002-2003 and the Board of Alderman approved said funding. (Plaintiff's Complaint dated June 16, 2003, Paragraph 8).  The receipt of funds is conditioned the applicant agreeing to numerous conditions set forth in, and executing and entering into a valid contract.  (Affidavit of Elizabeth Smith, attached as Ex.

3a).    Furthermore, a memorandum dated May 31, 2002 was sent to all CDBG recipients, including the plaintiff setting forth the City's position as to its diligence in monitoring the programs with suspension of funding as a sanction for noncompliance.  (Smith Aff, Ex. 3b)

In May of 2002, Andrew J. Rizzo, Jr., the interim Director of the Livable Cities Initiative ("LCI"), received an oral request from Alderpersons Robin Kroogman, Edward Mattison and Juan Candelaria to investigate certain allegations of misconduct by FHDC. (Affidavit of Andrew Rizzo, attached as Exhibit 1) Pursuant to that request, Rizzo initiated an investigation. (Rizzo Aff., Ex.1).

On or about June 4, 2002, a meeting was held with [Harvey Edelstein and James Welter],  agents of the plaintiff, Thomas Ude of the Office of Corporation Counsel for the City of New Haven and Rizzo  to discuss the investigation of the plaintiff. (Rizzo Aff., Ex.1). On June 5, 2002, Rizzo receive a written request from Alderwoman Robin I. Kroogman to investigate Fair Haven Development Corporation. ((Rizzo Aff., Ex.1a)

On June 26, 2002, defendant Rizzo sent a letter to Harvey Edelstein, FHDC's CEO and Director of Operations for the plaintiff acknowledging Edelstein's offer of assistance in completing the City's evaluation/investigation of FHDC and requesting information from FHDC regarding issues raised in the investigation. (Rizzo Aff., Ex.1b). FHDC issued a reply in a letter dated July 22, 2002 that was non-responsive in several aspects. (Rizzo Aff., Ex. 1c).  Rizzo sent a second letter dated September 27, 2002 to Edelstein requesting further information from FHDC regarding certain questions and issues

regarding expenditures, transfers of property, etc. relevant to the ongoing investigation. (Rizzo Aff., Ex. 1c).

As a part of his investigation, on September 27, 2002, Rizzo requested an audit of FHDC by the Controller's office of the city of New Haven to determine whether, and the extent to which, FHDC was in compliance with City housing initiative objectives, whether FHDC was appropriately using City funding, and whether FHDC was meeting its obligations, both under the contract with the City and HUD rules. (Rizzo Aff., Ex. 1e).

The Controller's Office of the city of New Haven conducted an audit of FHDC. (Affidavit of Kevin Berry, Exhibit 2). The City requested information from FHDC in regard to its financial records from January 1, 2002 to December 31, 2002. (Berry Aff., Ex. 2) Although FHDC agreed to provide the information, it subsequently declined to divulge the same. (Berry Aff., Ex 2). Rizzo kept officials from FHDC informed of the investigation and welcomed their cooperation and participation. (Rizzo Aff., Ex.1). FHDC withheld financial records from the City that FHDC was required to provide in order to obtain CDBG funds. (Berry Aff., Ex. 2). The City is authorized by HUD to withhold funds from sub-recipients such as FHDC for failing to provide the City with its financial records as requested. (Berry Aff., Ex. 2).

After a lengthy and comprehensive investigation, Rizzo recommended that the City no longer fund FHDC. (Rizzo Aff., Ex.1). This recommendation was based upon the following findings made by Rizzo concerning FHDC: a) that it was an ineffective developer of quality affordable housing in that large amounts of funding provided by the

City had produced very few new housing opportunities for low and moderate income New Haven families; b) that it had left properties in blighted condition for long periods of time without an effective strategy to pay for the renovation of these properties, despite encouragement efforts by the City to either renovate or demolish said properties; c) that it had worked aggressively to thwart the City's efforts to spur the development of quality affordable housing in the Fair Haven section of the City, unless that development was done by FHDC or came with compensation to FHDC; d) that it had on at least two occasions engaged in questionable real estate transactions that apparently benefited the daughters of FHDC's Board president; e) that by FHDC's own admission, there had been inappropriate expenditures of Federal funds that benefited a non-qualifying partner organization of FHDC, that the true extent of such inappropriate expenditures could not be determined by the City due to necessary records not being made available to the City, and that there had not been a reimbursement to the City of these inappropriately expended Federal funds; f) that it had been non-cooperative and evasive during the City's investigation; and (g) in the above described areas, the City's efforts to make determinations had been hindered by the extremely poor record keeping of FHDC. The result of this investigation was forwarded to FHDC by way of memorandum dated February 6, 2003. (Rizzo Aff., Ex.1).

### B.   Real Estate Dispositions

When the City conveys real property to individuals or qualified non profit corporations for rehabilitation for creation of affordable housing, it requires the purchaser

to enter into a Land Disposition Agreement (LDA). (Rizzo Aff., Ex.1). The LDA requires a time schedule for performance of rehabilitation work. FHDC has failed to meet the time schedule for rehabilitation of properties conveyed to them. (Rizzo Aff., Ex.1).

The withholding of funds and properties from the plaintiff was based solely upon the findings of the investigation by defendant, Rizzo. (Rizzo Aff., Ex.1).

### III. LEGAL ARGUMENT

#### A. Standard for Summary Judgment

Summary judgment is appropriately granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82 (2d Cir. 2004). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, " Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), if the movant demonstrates an absence of such issues, the "non-moving party is obligated to produce probative evidence to supporting its view that a genuine factual dispute exists." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993). A genuine issue is not "created merely by the presentation of assertions that are conclusory." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, summary judgment should be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Here, as set forth below, the plaintiff cannot make a sufficient showing on a number of essential elements of its case, and there are no genuine issues as to any material fact that Defendants are entitled to judgment as a matter of law on Plaintiffs' claims.

    **B.**    **Defendants are Entitled to Judgment as a Matter of Law as to the Plaintiff's Procedural Due Process Claims Contained in Count One of Plaintiff's Complaint Dated June 16, 2003**

The plaintiff alleges that the defendants have violated their due process rights without any specification as to exactly what process was due.  The city did not violate the plaintiff's procedural due process rights as to the withholding of funding.

The Due Process Clause of the Fourteenth Amendment provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. Of Educ. V. Loudermill, 470 U.S. 532, 541 (1985).  The analysis of whether a plaintiff states a due process claim for improper deprivation of a liberty or property interest occurs in two steps. Narumanchi v. Bd. of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988) (citing Bd. of Regents v. Roth, 408 U.S. 564 (1972)).  The threshold issue is whether the complaint alleges a property or liberty interest protected by the Constitution. White Plains Towing Co. v. Patterson, 991 F.2d 1049, 1052 (2d Cir. 1993) (citing Matthews v.Elderidge, 424 U.S. 319 (1976)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral

expectation of it. He must, instead, have a legitimate claim entitlement to it." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).

The plaintiff has not alleged a clear property interest protected by the Constitution. As to funding, they had a unilateral expectation based upon the Board of Aldermen approval of "Recommendations for the Consolidated Housing and Community Development Action Plan for Fiscal Year 2002 –2003 (Plaintiff's complaint Dated December 3, 2002, Paragraph 8) Such funding is subject to regulations promulgated by HUD and the City may withhold funds if the sub-recipient does not comply with certain conditions. (Letter dated May 31, 2002, and Memorandum dated May 31, 2002). As the Plaintiff did not comply with the conditions, they were not entitled to the funding and therefore did not have a property interest protected by the constitution. (Berry Aff., Ex 2)

Even if the court determines that the plaintiff has a property in the CDBG funds, the City did not deny the plaintiff its procedural due process rights. "If a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process. The second step of the analysis thus asks what process is due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." Narumanchi v. Bd. of Trustees of Conn. State Univ., 850 F.2d at 72 (citing Matthews v.Elderidge, 424 U.S. 319 (1976)).

The Supreme Court has described "the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing *before* he is

deprived of any significant property interest." Cleveland Bd. of Educ. V. Loudermill, 470 U.S. at 542. (Emphasis in original).

> "The Due Process Clause, however, does not require specific procedures every time private interests are alleged to be in jeopardy. '"Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts." (Citation omitted). Due process "does not require a trial-type hearing in every conceivable case of government impairment of private interest.... The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." (Citation omitted). Hill Construction Company v. State of Connecticut, 366 F.Supp. 737, 742 (D. Conn. 1973).

The District Court dismissed a plaintiff's due process claim for failure to make "a specific allegation as to the sort of process to which he was entitled or how such entitlement was denied him. " Russo v. City of Hartford, 158 F.Supp.2d 214, 232. (D.Conn. 2001). The plaintiff's procedural due process claim that it was denied a property right is nothing more than "bald assertions and conclusions of law, [which] will not suffice to state a claim." Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000) (citations omitted).

In the instant matter, the City conducted an investigation. (Rizzo, Aff, Ex.1). The plaintiff was privy to the investigation and allowed to present information to the City that may have protected their ability to obtain funding. (Rizzo Aff., Ex.1). The plaintiff failed and refused to fully cooperate with the City in regard to information necessary to the audit and the investigation and therefore the City was entitled and in fact obligated under HUD Regulations to withhold such funding. (Rizzo Aff., Ex. 1 & Berry Aff., Ex. 2).

Absent a protected constitutional right and an allegation of the process that was due to it was not provided, the plaintiff's procedural due process claim fails as a matter of law.  The fact that the city conducted an investigation to which the plaintiff was encouraged to participate and in fact did participate further supports that the defendants are entitled to judgment as a matter of law in regard to the plaintiff's procedural due process claims.

      **C.**    **Defendants are Entitled to Judgment as a Matter of Law as to the Plaintiff's Substantive Due Process Claims Contained in Count Three of the Plaintiff's Complaint Dated December 3, 2002.**

The plaintiff asserts that it has a property interest in funding based upon the Board of Aldermen's approval of Recommendations for the Consolidated Housing and Community Development Action Plan for Fiscal Year 2002 –2003 (Plaintiff's complaint Dated December 3, 2002, Paragraph 8).  They have not asserted a basis for that right and where it is a protected right under the United States Constitution.

Substantive Due Process protects only those interests that are "implicit in the ordered concepts of liberty." Local 342, et al. V. Town Board of the Town of Huntington, et al., 31 F.3d 1191, 1196 (2d Cir.1994); Palko v. Connecticut, 302 US 319 (1937).  As such, a property interest must be "constitutionally fundamental" in order to implicate substantive due process.  Nicholas, M.D. v. Pennsylvania State University, et al., 227 F.3d 133, 141 (3d Cir.2000).  Before a plaintiff attempts to prove a deprivation of a property right in violation of substantive due process, the plaintiff must first establish that

it has a federally protectable right. Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir.1999).

Assuming these rights they allege are protected, the city has not violated their substantive due process rights. Governmental conduct does not violate substantive due process unless it "shocks the conscience;" County of Sacramento v. Lewis, 523 U.S. 846 (1997); and egregiously transcends the "decencies of civilized conduct." Rochin v. California, 342 U.S. 173 (1952); ATC P'shp v. Town of Windham, 251 Conn. 597 (1999).

The City did not violate the plaintiff's substantive due process right because even if the plaintiff had a property right in the funding, as alleged, the City did not withhold said funding prior to an investigation that included an audit by the controller's office for the City of New Haven. (Rizzo Aff., Ex 1). This audit and investigation took several months and the plaintiff was encouraged to and did participate in this investigation. (Rizzo Aff., Ex 1).

The conduct of the defendants through the actions of Rizzo in investigating and determining that the plaintiff should not receive the federal funding it was allocated does not shock the conscience nor transcend the decencies of civilized conduct.

    **D.    Defendants are Entitled to Judgment as a Matter of Law as to the Plaintiff's Claims of Violations of its Equal Protection Rights Contained in Count Two of the Plaintiff's Complaint Dated December 3, 2002 and Count One of the Plaintiff's Complaint dated June 16, 2003.**

The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

U.S. Const. amend. XIV, § 1. Under Section 1983, a plaintiff claiming a violation of his right to equal protection must prove the existence of "purposeful discrimination." Batson v. Kentucky, 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69 (1986). The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). Recently the Supreme Court held that an equal protection claim is valid, "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

As to these "class of one" or "*Olech*" claims, such claims are valid when a plaintiff alleges that he has been treated differently from other similarly situated people and that there was no rational basis for this differential treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). To prevail in an action alleging a "class of one" violation, the plaintiff must show that he was treated differently from similarly situated organizations and that there was no rational basis for the difference in this treatment. Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004); *Olech*, 528 U.S. at 564. Additionally, the plaintiff must show that any disparate treatment was intentional. Giordano v. City of New York, 274 F.3d 740, 750 (2d Cir. 2001).

This test is different from the test to be used in determining whether there has been "selective enforcement/treatment". See Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir.2004). To succeed in an action alleging selective prosecution/enforcement, plaintiffs

in this circuit must show both (1) that they were treated differently from similarly situated individuals, and (2) that such differential treatment was based on impermissible consideration such as race, intent to inhibit the exercise of a constitutional right or bad faith intent to injure a person. Cobb, 363 F.3d at 110; See also Harlen Associates v. Incorp. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

Although the plaintiff alleges that they were treated differently from similarly situated individuals, they give no specifics as to who is similarly situated. The defendants, through the affidavit of Kevin Berry, show that at the same time another organization was subject to an audit due to complaints of irregularities in their spending of CDBG funds. (Berry Aff., Ex 2).

In any event, the City's decision to defund the plaintiff and to refrain from conveying any other properties to it was based upon its investigation of the plaintiff and a finding that the plaintiff's activities did not meet with the City's goals of funding sub-recipients who operate in manner that makes optimum use of limited resources to revitalize the City through the rehabilitation of housing that is in a manner that is cost efficient and beneficial to citizens of the city. (Rizzo, Aff, Ex. 1).

Therefore the defendants, if they did treat the plaintiff differently than other entities to which it allocated funding or conveyed properties, they had a rational basis for such treatment as spelled out in its investigative report. (Rizzo, Aff., Ex. 1).

  **E. There was no Infringement of Plaintiff's rights under the First Amendment**

First Amendment protection embraces two types of associational rights: (1) intimate human relationships, and (2) association for purposes of engaging in protected speech. Roberts v. United States Jaycees, 468 U.S. 609, 617-618, 104 S.Ct. 3244 (1984). It is presumed, based on plaintiff's allegations, that a violation of the second type of associational right is being claimed. The First Amendment protects the right to associate with others "in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Bd. Of Dirs. Of Rotary Int'l v. Rotary Club, 481 U.S. 537, 548, 107 S.Ct. 1940 (1987). Expressive association claims "are considered to be the equivalent of free speech claims, since the expressive conduct alleged is inextricably linked to protected speech. Economic Opportunity Commission of Nassau County, Inc. v. County of Nassau, 106 F.Supp.2d 433, 439 (E.D.N.Y. 2000). See also Shelton v. Tucker, 364 U.S. 479, 486, 81 S.Ct. 247 (1960). "Freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the liberty assured" by the First Amendment, and is "undeniably enhanced by association." NAACP v. Alabama, 357 U.S. 449, 460, 78 S.Ct. 1163 (1958). However, "the First Amendment does not create property or tenure rights, and does not guarantee absolute freedom of speech," Board of County Commissioners v. Umbehr, 518 U.S. 668, 675, 116 S.Ct. 2342 (1996); and the right to associate for expressive purposes is not absolute. Roberts v. United States Jaycees, supra, at 622.

"To establish a First Amendment retaliation claim under Section 1983, a plaintiff must show: (1) conduct by the plaintiff protected by the First Amendment, and (ii) that the

defendant's conduct was motivated by or substantially caused by the exercise of free speech." Economic Opportunity Commission of Nassau County, Inc. v. County of Nassau, supra, at 437, citing Board of County Commissioners v. Umbehr, supra, at 675. To be cognizable, the interference with associational rights must be "direct and substantial" or "significant." Fighting Finest, Inc. v. Bratton, 95 F.3d 224, 228 (2d Cir. 1996). The associational conduct at issue must touch on a matter of public concern. Cobb v. Pozzi, 363 F.3d 89, 102 (2d. Cir. 2004). If a plaintiff discharges this burden, the defendant "can escape liability by showing that it would have taken the same action even in the absence of protected conduct." Board of County Commissioners v. Umbehr, supra, at 675. In this regard, "a fact-sensitive and deferential weighing of the government's legitimate interests" is required. Id., at 677. Government needs to take appropriate steps to address "poor performance, to improve the efficiency, efficacy, and responsiveness of service to the public, and to prevent the appearance of corruption." Id., at 674. While such a view does not lead to a per se denial of liability for a governmental entity, the dangers of burdensome litigation and the imposition of rigid rules necessitates attentive application of the requirement "of proof of causation and substantial deference" to the "government's reasonable view of its legitimate interests." Id., at 678.

The mere fact that a plaintiff asserts a claim, as was done here, for infringement of its First Amendment right to freedom of association does not necessarily mean that the allegations are sufficient to present such a claim. See Roberts v. United States Jaycees,

supra, at 617-620 describing the right to associate for First Amendment activities). Not all governmental action affecting the activities of an association or group calls into question the First Amendment right to freedom of association. See Piscottano v. Murphy, 317 F.Supp.2d 97 (D.Conn. 2004) (corrections officers associating with a motorcycle gang); and NYC C.L.A.S.H., Inc. v. City of New York, 315 F.Supp.2d 461 (S.D.N.Y. 2004) (smoking bans). To establish a Section 1983 action for infringement of its First Amendment right, the plaintiff must identify the allegedly infringed right. Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, S.Ct. (1977). Not every assertion will be considered a judicially cognizable violation of the First Amendment. Hankard v. Town of Avon, 126 F.3d 418, 423 (2d Cir. 1997). Plaintiff "must make specific allegations that indicate a deprivation of constitutional rights; general indirect and conclusory allegations are not sufficient." Id. Plaintiff's allegations with respect to its First Amendment claim are at best mere speculation, with no causal connection to the events that transpired. It is difficult to ascertain from the allegations who or what group allegedly had their First Amendment right or rights infringed, and in what manner.

Assuming that the plaintiff has set forth a First Amendment claim, the facts clearly demonstrate in the instate case, that the rescission of the Community Block Development Grant and the refusal to transfer property, were not motivated by a retaliatory motive, but rather by legitimate concerns about the plaintiff's use of prior grants, business practices and poor performance. Such a conclusion came about after a

thorough investigation. Plaintiff cannot show that its conduct was deserving of First Amendment Protection, nor can it show that the conduct of which it complains was motivated or substantially caused by its exercise of a First Amendment right.

### F.      Defendants are Entitled to Qualified Immunity

"The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police [or other] conduct. Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2158 (2001). "It is sometimes difficult for an officer [or other state actor] to determine how the relevant legal doctrine, . . ., will apply to the factual situation the officer confronts." Id. "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." Id. The United States Supreme Court has held that the defense of qualified immunity protects government officials performing discretionary duties from liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable perform would have known." Ham v. Greene, 248 Conn. 508, 520 (1999); quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

The first inquiry with respect to qualified immunity is whether the plaintiff has alleged a violation of a constitutional right and second, whether that right was "clearly established" at the time of the alleged violation. Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292 (1999). The defense of qualified immunity will protect a government officer "if it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Menon v. Frinton, 170 F. Supp. 2d 190, 194 (D. Conn.

201), citing <u>Lennon v. Miller</u>, 66 F.3d 416, 421 (2d Cir. 1995).  Whether the defendants are entitled to qualified immunity is a question of law for the court to decide.  <u>Finnegan v. Fountain</u>, 915 F.2d 817, 821 (2d Cir. 1990).

The decision to rescind the CBDG and the refusal to transfer property to the plaintiff was the decision of defendant Andrew Rizzo, the head of Livable Cities Initiative.  His review of plaintiff's activities concerning these items was one of his responsibilities.  Said investigation was prompted by a request of members of the Board of Aldermen.  Assuming arguendo that a constitutional violation did occur, that facts of this case which have been previously set forth show that it was objectively reasonable for the defendants to believe that their actions were lawful at the time of the challenged act.  Considering the totality of the situation that confronted the defendants, persons of reasonable competence, in like circumstances, could disagree as to whether there actions were reasonable.  Therefore, the defendants are protected from liability by qualified immunity.

THE DEFENDANTS

BY: /s/_____
Audrey C. Kramer
Assistant Corporation Counsel
City of New Haven
Office of Corporation Counsel
165 Church Street, 4th Floor
New Haven, CT 06510
Tel. #: (203)946-7964
Fax #: (203) 946-7942
E-mail: Akramer@newhavenct.net
Fed. Bar #: ct14520
Their Attorney

**CERTIFICATION**

This is to certify that a copy of the foregoing was delivered electronically and/or mailed, postage prepaid, on March 5, 2007, to the following counsel of record:

John R. Williams, Esq.
John R. Williams & Associates
51 Elm Street, Suite 409
New Haven, CT 06510

/s/_____
Audrey Kramer

J:\CYCOM32\WPDOCS\D008\P004\00023139.DOC