UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FAIR HAVEN DEVELOPMENT CORPORATION | : |
| VS. | : NO. 3:02CV2130 (AWT) |
| JOHN DeSTEFANO, ET AL. | : APRIL 9, 2007 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    BACKGROUND**

Fair Haven Development Corporation ("FHDC"), the plaintiff, is a Connecticut nonprofit corporation engaged in the rehabilitation of urban housing stock for the creation of affordable housing in the Fair Haven section of the City of New Haven. It focuses on rehabilitation of two and three family dwellings in Fair Haven; from 1995-2002 it had rehabilitated and sold approximately thirty buildings, with two and three family units to residents. Its funding for projects was provided by federal Community Development Block Grants (CDBG) administered by the City of New Haven through the Liveable City Initiative (LCI).  In 2002, Andrew Rizzo was the Director of LCI.

The plaintiff was awarded its annual grant of $95,000 for the 2002-03 fiscal year in April, 2002, and the Mayor's budget was approved by the Board of Aldermen.  (Def. Ex. 3a)

During this time period, Harvey Edelstein, the Executive Director of FHDC, learned that Mayor DeStefano was concerned about one of plaintiff's advisory board members, Raul Avila, and his vocal opposition to a large block multi-family housing development proposal which was pending before the Board of Aldermen. At the time, Avila was the Alderman for the 16th ward, representing the Fair Haven district. DeStefano supported Mutual Housing Association, a developer which sought to build high density multi-family housing in the area, to demonstrate his commitment to the Hispanic population which was dominant in the area. FHDC's executive director, Harvey Edelstein, was told by Andrew Rizzo, who worked in the DeStefano administration, and also by Julio Gonzalez, the Mayor's executive assistant, to ask Avila to stop hindering the Mayor's initiative, or there might be consequences for the FHDC projects. (Ex. 1, Avila Affidavit, ¶ 9) At a meeting on May, 9, 2002, Avila renewed his support for the FHDC application for the same parcel of land which Mutual Housing sought for its development (Ferry St. Parcel).

After Avila voiced his opposition to the Mutual Housing Association development proposal. Robin Kroogman, the Chairperson of the Community Development Committee, a strong DeStefano ally, requested that FHDC be investigated for conflicts of interest concerning relatives of Board members

purchasing properties.

Shortly thereafter, in June, 2002, Andrew Rizzo, Director of Livable City Initiative, which administered the CDBG program, started an intensive investigation of FHDC's operations; for example, he requested a description of all of FHDC's telephone charges. (Def. Ex. 1b, p. 2) The plaintiff was able to document $303 of improper use of its telephone service by FLECHAS during the 2001-02 fiscal year. FLECHAS was a sister agency which worked out of the same building as FHDC, and the plaintiff notified defendant Rizzo that it was seeking reimbursement as of October, 2002. (Def. Ex. 1f, see attachment)[1]

Commencing in June, 2002, the plaintiff attempted to fully comply with defendant Rizzo's requests. (Def. Ex. 1c, Ex. 5, Ex. 7) FHDC responded to the conflict of interest charge from Kroogman concerning the 175 Lloyd St. Property within three weeks. (Def. Ex. 1b, re: sale of property to daughter of Board member)

---

[1] The 2002-03 grant to FHDC included cooperation with FLECHAS on a Grand Ave. Project in the Fair Haven district of New Haven. (Def. Ex. 3a)

Defendant Rizzo also acted to obstruct efforts by the plaintiff to move forward with an FHDC project at 271 James St. Documents show that in June, 2002, he initially ordered the plaintiffs to go ahead with "exploratory demolition" prior to commencing work, and then days later revoked the permit issued by the city. (Ex. 6) The City then completely demolished the building several months later, which eliminated the possibility that FHDC could proceed with its planned re-hab project.

Despite the plaintiff's efforts to provide information to defendant Rizzo during the next five (5) months, including the audits for 2001 and 2002 requested by the City, the defendants concluded that FHDC should not be permitted to receive its annual project funds. (Def. Ex. 1g)

After FHDC was de-funded by the defendants, it applied to the Federal Home Loan Bank of Boston for project funding, and received a $300,000 grant for capital projects. (Ex. 3) The plaintiff met all of the requirements of the federal program and state agencies supported the proposal.

The plaintiff contends that the defendants withdrew the CDBG funding in 2002-03 as retaliation for the opposition of Raul Avila, an FHDC Advisory Board member, to the construction of large block apartment housing in Fair Haven, which he contended would change, and has, in fact, altered the character of that neighborhood in New Haven.  During the same time period, the defendants also failed to transfer to the plaintiff several parcels of property which it had previously identified for rehabilitation by FHDC. The investigation by defendant Rizzo was simply a pretext for the retaliatory action by defendant De Stefano.

There was no rational basis to de-fund the grant; FHDC was punished for its opposition to development of apartment complexes in the neighborhood, and Raul Avila's opposition, at Board of Alderman and committee meetings,  to the Mutual Housing proposal in Fair Haven. The plaintiff was treated differently from any other recipient of funding in April, 2002; the only other organization which was de-funded was not similarly situated to FHDC.  West Rock Development Corporation was a day care operation which lost its state license; after the license was revoked the city placed its funding on hold. (Def. Ex. 2e)

## II.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ...show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of N. Y., 72 F.3d 1051, 1060 (2d Cir.1995) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598 (1970)). "The duty of the court is to determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Id. (citations omitted). "If reasonable minds could differ as to the import of the evidence ... and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir.1997) (internal quotation, citation, and alteration omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586. (1986) (internal quotation and citation omitted). In moving for summary judgment against a party who will bear the ultimate

burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied by pointing to an absence of evidence to support an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986). "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.' " Parker v. Sony Pictures Entm't, c., 260 F.3d 100, 111 (2d Cir.2001) (quoting Celotex, In 477 U.S. at 324, 106 S.Ct. 2548); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir.1994).

  In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed.R.Civ.P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient. Matsushita, 475 U.S. at 586, 106 S.Ct. 1348 (citations omitted).

  "The duty of the court is to determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual

assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Id. (citations omitted). "If reasonable minds could differ as to the import of the evidence ... and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir.1997)

**III.   ARGUMENT**

A.    DENIAL OF EQUAL PROTECTION

The equal protection clause, which provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws," basically means that all persons similarly situated should be treated alike. Brown v. City of Oneonta,  221 F.3d 329, 337 (2d Cir.2000), City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).

A successful equal protection claim may be brought by a so-called class of one "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564-565 (2000)  Although a typical equal protection claim involves discrimination against people based on their membership in a vulnerable class, the federal courts have

recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials. LeClair v. Saunders, 627 F. 2d 606, 608-10 (2d Cir. 1980).

The plaintiff must demonstrate that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment; to establish a violation a plaintiff is not required to show that a defendant was motivated by ill will or malice. Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir.2001); Morron v. City of Middletown, 2006 U.S. Dist. LEXIS 87932, at 19-21 (D.Conn. 2006).

The plaintiff was treated differently from any other recipient of funding in April, 2002; the only other organization which was de-funded was not similarly situated to FHDC. It was a day care operation which lost its state license; the city subsequently placed West Rock Development's funding on hold. (Def. Ex. 2e). No other CBDG recipient was investigated for questionable expenses in 2002, although Kevin Berry raised the issue as a general policy issue in an internal memorandum to defendant Rizzo. (Ex. 4)

Although the FHDC 2001 audit had not been submitted by April, 2002, the program was awarded a grant for the 2002-03 year. (Def. Ex. 3a) If this was such a stumbling block, why was FHDC even designated as a recipient? The plaintiff

9

provided the defendants with two audits, one for the 2001 fiscal year and another for the 2002 fiscal year as of October, 2002; there was no rational basis for the defendant's insistence on de-funding the agency grant several months later.

In awarding the 2002-03 grant, the defendants had not complained about the number of houses which had been completed by the plaintiff from 1995-2001; FHDC was regarded as a small non-profit organization working with residents to provide affordable housing and their track record had been acceptable.

B.   RETALIATION FOR FIRST AMENDMENT ACTIVITY

In order to establish a First Amendment retaliation claim, the plaintiff must prove that: (1) it engaged in constitutionally protected speech because one of its members spoke as a citizen on a matter of public concern; (2) the plaintiff suffered an adverse action; and (3) the speech was a motivating factor" in the adverse action by the defendants. Beechwood Restorative Care Center v. Leeds, 436 F.3d 147 (2d Cir. 2006); Gronowski v. Spencer, 424 F.3d 285, 292 (2d Cir.2005).  In addition, a plaintiff  must show that each defendant "was personally involved ... in the alleged constitutional deprivations." Id. at 293. If a plaintiff makes this required showing, defendants may avoid liability if they can demonstrate that either (1) the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech; or (2) the plaintiff's

expression was likely to disrupt the government's activities and that the harm caused by the disruption outweighs the value of the plaintiff's expression. Cobb v. Pozzi, 352 F.3d 79, 91 (2d Cir.2003). The defendants have not argued that Avila's advocacy caused a disruption that outweighed the value of his speech. See, Reuland v. Hynes, 460 F.3d 409, 415 (2d Cir.2006).

    The timing of the investigation of FHDC, which occurred shortly after Alderman Avila failed to heed warnings from defendant Rizzo that his opposition to the Mutual Housing proposal might have negative consequences, raises a question of retaliation for First Amendment activity by an FHDC Advisory Board member. Avila states that he was told by the Executive Director (Edelstein) that the Mayor's executive assistant, Julio Gonzalez had explicitly warned him. (Ex. 1,¶9) The defendants claim that a letter from another Alderperson, Robin Kroogman, was the reason they decided to review the plaintiff's activities; but the plaintiff responded to all of their concerns by October, 2002. After October, defendant DeStefano continued to hold up the funding because he wanted to give FHDC a "lesson"; Avila's vocal opposition to the Mayor's priorities for Fair Haven meant that FHDC would be penalized. As a member of the plaintiff's advisory board, Raul Avila represented the community's interest in preservation of owner occupied residences. Security issues were a prime concern and many people in Avila's district believed that crime prevention would be more successful

if the traditional multi-family style neighborhood could be retained.  This conflicted with defendant DeStefano's plans; he sought large scale housing development in New Haven, tangible and visible, as he attempted to build momentum for a campaign for Governor.

      Circumstantial evidence may be used to support the denial of a defense motion for summary judgment.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  "Circumstantial evidence...is intrinsically no different from testimonial evidence.  Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result.  Yet this is equally true of testimonial evidence.  In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference.  In both, the jury must use its experience with people and events in weighing the probabilities."  Holland v. United States, 348 U.S. 121, 139-40 (1954), *reh. den.*, 348 U.S. 932 (1955).

      The plaintiff has presented enough evidence to demonstrate that there is a material issue of fact which must be considered by a jury that the defendants' actions violated the plaintiff's First Amendment rights.

C.  QUALIFIED IMMUNITY

Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: " '(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.' " Poe v. Leonard, 282 F.3d 123, at 133 (2d Cir. 2002) (quoting Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir.1998)); see also Lennon v. Miller, 66 F.3d 416, 421 (2d Cir.1995) (summary judgment is appropriate if "the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendant's conduct under the circumstances"). In this case, neither condition has been satisfied.

"Generally, a government or municipal officer's actions are considered objectively unreasonable 'when no officer of reasonable competence could have made the same choice in similar circumstances.'" Kendrick v. Town of Winchester, 11 F. Supp. 2d 212, 216 (D. Conn. 1998).  Quoting Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).

Defendants Rizzo and DeStefano knew, that in February, 2003,  they were terminating a benefit which had been mandated by New Haven's Board of Aldermen in April, 2002.  They knew that plaintiff had submitted its fiscal year 2001 and fiscal year 2002 audits within one month of defendant Rizzo's request

of September 27, 2002. (Ex. 7) Defendant Rizzo had received documentation that FLETCHAS, an agency working with FHDC to develop several units of housing on Grand Ave., had charged several hundred dollars of telephone calls to the plaintiff. The plaintiff had invoiced the sister agency for this amount as of October, 2002, and defendants were fully aware of this. (Def. Ex. 1f, 10/02 invoice to FLETCHAS) The plaintiff had provided defendant Rizzo with timely responses to his inquiries during the summer of 2002. (Ex. 5, Ex. 7, Def. Ex. 1c, 1f) Although the Mayor had discretion to select grantees for approval by the Board of Aldermen, once the approvals had been made, as they were in April, 2002, the defendants' refusal to enter into their annual agreement with the plaintiff by October, 2002, was intentionally punitive.

## IV.  CONCLUSION

WHEREFORE, for the reasons set forth above, the plaintiff respectfully requests that the defendants' Motion for Summary Judgment be denied.

THE PLAINTIFF
Fair Haven Development Corporation


_____/s/_____
Katrena Engstrom
Fed. Bar No. ct09444
John R. Williams and Associates, LLC
51 Elm St.
New Haven, CT 06510
(203)562-9931
Fax: 776-9494
Kengstrom@johnrwilliams.com


CERTIFICATION OF SERVICE

I hereby certify that on the date set forth above, a copy of foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.


____/s/_____
Katrena Engstrom