UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FAIR HAVEN DEVELOPMENT CORPORATION | : |
| VS. | : NO. 3:02CV2130 (AWT) |
| JOHN DeSTEFANO, ET AL. | : APRIL 9, 2007 |

City of New Haven
County of New Haven

## AFFIDAVIT OF RAUL AVILA

RAUL AVILA, having first been duly sworn, hereby deposes and states:

1. I am over the age of eighteen and I understand the obligations of an oath.

2. I am a member of the Advisory Board of Fair Haven Development Corporation from 1995-2003. I became a member of the Board of Directors of the organization in 2003.

3. I was elected as an Alderman for the 16th Ward of the City of New Haven from 1994-2003; I served as Co-Chair to the Joint Committee of the Human Resources and Community Development Block Grant from 1995-2003.

4. During those years, I participated in developing the program guidelines for distribution of Community Development Block Grants, a federal program, to grantees within the City of New Haven.

5. Throughout my involvement as a City Alderman representing the 16th Ward of the City of New Haven, I worked with community development groups on various planning projects, which included the development of affordable housing in the city.

6. I was on record throughout the my tenure of being a strong advocate for the development of homeowner/occupied housing in the City and in particular in the 16th ward that I represented.

7. In 2001, the Fair Haven Development Corporation placed a bid for a Parcel of Land on Ferry Street between Grand Avenue and Clay Street in the 16th Ward in New Haven. The project called for home-ownership, which were owner-occupied 3 structures with six units of affordable housing.

8. In the same year, Mutual Housing Association, another non-profit housing developer, put in a bid for the same property for a sixteen(16) unit apartment development, which was a rental project and not home-ownership. Advocacy efforts were undertaken by both organizations who where lobbying for their prospective projects.

9. In May, 2002, shortly before the time a final vote would be taken on the disposition of the parcel of land in question, the Executive Director at FHDC, Harvey Edelstein, was approached by defendant Rizzo, and later by defendant Gonzalez, who told him that I needed to end my support for the FHDC proposal for Ferry St. or FHDC might find it difficult to move ahead with their other projects.[1]

---

[1] Mutual Housing was awarded the piece of property by the city administration's Planning and Development Committee in July, 2002.

3

10. On May 9, 2002, Robin Kroogman, another Alderperson and close ally of Mayor DeStefano, and I attended a meeting of the Community Development committee. The agenda for the meeting included the Ferry St. Parcel, which both FHDC and Mutual Housing wanted to purchase.

11. Kroogman insisted that I should serve as an interpreter for a speaker who had arrived with Mutual Housing; I declined to do this because I did not believe it was appropriate, since I represented the interests of FHDC as an advisory board member, and thought that Mutual Housing would complain at a later date. Kroogman asked security to remove me from the meeting, but I remained at the meeting and advocated for owner occupied housing development.

12. Within days after the May, 2002 meeting, Robin Kroogman requested that FHDC be investigated by defendant Rizzo, Director of the Liveable City Initiative ("LCI", City agency).

13. It is my belief that based upon the conversations I had with Harvey Edelstein, FHDC Executive Director, that FHDC was intentionally targeted and de-funded by the defendants because of my advocacy for their mission to maximize home ownership in Fair Haven versus rental apartment development.

14. After the May 9, 2002 meeting, defendant Rizzo's attitude toward FHDC changed drastically; prior to May 9, he had generally been supportive, but after the hearing on the Ferry St. Property, he opposed FHDC's efforts to proceed with its acquisition of properties and rehabilitation projects. (Testimony of Harvey Edelstein, FHDC v. City of New Haven, 03-048003, pps. 83, 100-106, Ex. 8, Summary of FHDC projects pending as of 2/03)

15. From 1995-2002, FHDC complied with and met all of the requirements to obtain funding through the Community Block Grant program, administered by the LCI.

16. In 2001, FHDC was late in submitting its annual audit. FHDC had obtained an extension from the IRS, conveyed this to Kevin Berry during the summer of 2002, and on October 30, 2002, delivered the fiscal year 2001 and 2002 annual audits. (Ex. 7)

17. The submission of a late audit for fiscal year 2001-2002 did not affect the initial award of the 2002-03 CBDG grant by the City and The Board of Aldermen in April 2002, and should not have been used as a rationale for the de-funding recommended by defendant Rizzo in February, 2003. (Def. Ex. 3a, Letter notifying the plaintiff of the $95,000 award)

18. If FHDC had obtained continued funding from the defendants after 2002, the organization would have been able to substantially increase the number of units it could offer to buyers in the Fair Haven neighborhood; an interview which defendant Rizzo gave on Channel 8 TV concerning his investigation of the plaintiff was particularly damaging.

19. Despite defendant Rizzo's investigation of the plaintiff in 2002, private financial institutions, state agencies and the Federal Home Loan Bank of Boston continued to support the efforts of FHDC to obtain funding for their projects; the Federal Home Loan Bank

        awarded a $300,000 grant to the plaintiff for three multi-family homes which were completed from 2002-2006. (Ex. 3)

20.     The defendants' actions toward FHDC had a negative effect upon the community's social and economic stability, because owner-occupied housing tends to foster a sense of community among residents, and leads to safer and quieter neighborhoods.

21.     I believe that the defendants de-funded the plaintiff's 2002-03 grant because I was outspoken in my public opposition to the Mayor's plan to maximize large block rental housing development in my ward, and in particular, my opposition to awarding Mutual Housing another parcel for this type of development in Fair Haven.

22.     No other organization receiving CBDG funds was subjected to this type of inquiry by the defendants; defendant Rizzo's reference to West Rock Development is not pertinent, because the CBDG grant allotted funds for a day care and an after-school program; the state removed West Rock's license to provide day care before the City took any action. (Def. Ex. 2e, Kevin Berry memo)

23. For purposes of defendants' audit, FHDC provided all of the information requested by the defendants concerning its program activities through fiscal year 2002 and cooperated fully; the "lack of cooperation" cited by defendant Rizzo in his recommendation to de-fund FHDC is an inaccurate statement. (Def. Ex. 2d[e])

24. The Board of Aldermen have a ministerial duty to automatically act to de-fund any monies which have not been used pursuant to the City's Annual "Consolidated Action Plan Statement of Activities" (CAP), when they act on the subsequent year's plan; this was the action they took as a bookkeeping measure in March, 2004. (Ex. 11 (Order of Board of Alderman confirming 2002-3 CDBG grants, Def. Ex. 3, Smith Affidavit, ¶9)

Subscribed and sworn to me this 9th day of April, 2007.

_____
RAUL AVILA

_____
Comm. Of Superior Court

9