**EXHIBIT 5**

RECEIVED

# FAIR HAVEN DEVELOPMENT CORPORATION

FHDC

July 18, 2002

Mr. Andrew J. Rizzo, Jr., Interim Executive Director
Livable City Initiative – City of New Haven
165 Church Street, 3rd Floor
New Haven, CT 06510 – FAX: 946-4899

Re:   1. Invitation to Dedication Ceremony for the successful completion of the renovation of 182 and 142 Lloyd Street
      2. Your "Unsafe Notice and Order to Demolish" Letter (dated 6/21/02; received by us on 6/26/02) for the house at 271 James Street
      3. Your "Evaluation/Investigation" Letter of 6/26/02

Subject: Readiness to Proceed with Rehabilitation of 271 James Street, 260 James Street, and 221 Lloyd Street

Dear Mr. Rizzo:

Thank you for taking the time to meet with the board members and staff of FHDC the other week, and thank you for your two letters dated 6/21/02 and 6/26/02 *(see above)*, to which this letter responds.

Your "evaluation/investigation" letter states that there are "concerns about FHDC's ability to complete projects." I am happy to report that there need be no <u>current</u> concerns, since FHDC's ability to complete projects is well-demonstrated by its successful rehabilitation and sale of 152 Lloyd Street, completed in January of this year, and its successful rehabilitation and sale of 142 and 182 Lloyd Street, both of which will be completed in a matter of weeks.

Please consider this letter a formal invitation to attend our Dedication Ceremony for 142 and 182 Lloyd Street. The ceremony is scheduled to be held during the first week of August 2002. As you know, FHDC acquired and renovated these formerly blighted, abandoned residential buildings over the course of the past four and a half months, and both renovations are on time and on budget. Both homes are under contract to be sold to low-income families who will be moving in immediately following the Dedication Ceremony. We will send you a formal invitation later; we hope you will be able to attend this ceremony.

The remainder of this letter addresses only your Order to Demolish letter and the portion of your evaluation/investigation letter that concerns the house at 271 James Street. All of the other issues mentioned in your evaluation/investigation letter will be addressed in a separate letter, which we are currently preparing.

Your evaluation/investigation letter states that a building permit (BP# 2001-0390) was issued on May 15, 2001, for exploratory demolition on 271 James Street, and that this permit expired six months later, no work having been performed on the property during that time. This is not entirely accurate: exploratory demolition and related work – such as an assessment of rehab feasibility, cost estimates, and the drafting of drawings and specifications – was in fact performed on the property by Warner Marshall of the Housing Rehabilitation Institute (HRI) and by other FHDC contractors and associates during this time, in preparation for the full rehabilitation of the property. This is the main reason that the permit was pulled, as was stated on the permit application, and such work was in fact carried out. Another reason, however, that the building permit was pulled was to stop the city's imminent and unnecessary demolition of this property and thus save this structure



# FAIR HAVEN DEVELOPMENT CORPORATION

for redevelopment into affordable housing for low- and moderate-income families, as per the housing preservation/development mission of both FHDC and LCI.

Your evaluation/investigation letter also states that a building permit (BP# 2001-1142) was issued on November 19, 2001, for rehabilitation work on 271 James Street, and that this new permit expired six months later, no work having been performed on the property during that time. This also is not entirely accurate: this building permit was issued four days after my contract with FHDC began (I have been involved with FHDC since November 15, 2002), and I immediately began examining the property and reviewing the drawings and specifications that had previously been prepared. I determined from my examination of the property and documents that the existing drawings and specifications unfortunately were not completely accurate as to the extensive work needed for this property, and that, as a result, construction could not proceed at that time. To remedy the situation, I continued exploratory demolition and related predevelopment activities, including a more detailed assessment of rehab feasibility, revised cost estimates, and the drafting of new, corrected drawings and specifications for the property. All of this work was conducted under the new permit (BP# 2001-1142), in preparation for the full rehabilitation of the property. Due to the extensive work required on this property and the workload of other FHDC development activities, such as the rehabilitation of 142 and 182 Lloyd Street, these tasks took some time to complete. The fact that this work was performed and completed is evidenced by the drawings and specifications you received on 6/19/02. Under my direction and under BP# 2001-1142, FHDC also continued to seek the appropriate funding to carry out the rehabilitation of this property and submitted an application for HOME funds to LCI on 3/25/02 – a funding application which still has not been processed by LCI. Also, as you may know, FHDC submitted an application to the Federal Home Loan Bank of Boston on 4/29/02 for Affordable Housing Program (AHP) funding for a group of properties that included 271 James Street, and a state housing Tax Credit application has likewise been submitted for that same group of properties.

On 5/10/02, FHDC requested an extension of BP# 2002-1142, in anticipation of the start of construction on 271 James Street pending receipt of a HOME commitment letter from LCI, but this request was denied. FHDC then applied for and was issued a new building permit on 6/24/02 in anticipation of the start of construction on this property, but this permit was revoked by you in a separate letter dated 6/26/02. Although we are ready to begin construction work on the property at 271 James Street as soon as our city HOME funding is approved, it is hard to see how FHDC can begin such work if you will not allow us to take out the necessary building permit.

Your letter's statement that FHDC "has not performed to the level of expectation implied by FHDC" is, I believe, a matter of interpretation and opinion. Regardless, no amount of pointing to the past can change the fact that FHDC has proven itself capable – by its work at 152, 142, and 182 Lloyd Street – of rehabilitating the house at 271 James Street, as well as the other properties identified in our current activities report *(attached)*, and FHDC deserves the opportunity to do so.

As you know, on 3/25/02, FHDC submitted an application to LCI for HOME funds for the complete rehabilitation of three blighted residential buildings *(referenced above)*, including 271 James Street. As recently as 5/2/02, LCI staff stated that the processing of this HOME application and the commitment of that HOME funding would be completed within five weeks – which would have been on 6/6/02, almost six weeks ago.

On 5/24/02, as per your request, I sent you copies of the final draft of the drawings and specifications for the complete rehabilitation of the three blighted residential buildings referenced above, including 271 James Street.
On 6/19/02, FHDC sent you copies of the <u>final, finished drawings and specifications</u> for the complete rehabilitation of the three blighted residential buildings *(referenced above)*, including 271 James Street. As the

# FAIR HAVEN DEVELOPMENT CORPORATION 

specifications for this work make clear, the pending rehabilitation will eliminate any and all unsafe conditions at this address, thus addressing the issue of the unsafe condition of this property in the community.

As previously mentioned in the FHDC letter that you also received on 6/19/02, FHDC has a pre-qualified homebuyer who has signed a sales agreement and made a deposit to purchase 271 James Street after rehabilitation is complete, and FHDC has a written commitment for construction financing for the rehabilitation of all three properties mentioned above, including 271 James Street. Thus, I repeat: everything necessary to bid this contract and begin construction is now in place, except a commitment letter from LCI for the City of New Haven's HOME funds for this project and a building permit. With such a letter and the proper building permit in hand, we can begin construction on 271 James Street within three weeks.

Thus, the fact is that there is no reason to order the demolition of the property at 271 James Street at this time, since the only obstacles to FHDC's immediate rehabilitation of this property and the creation of an affordable two-family home for a low- to moderate-income family are LCI's completion of the processing of FHDC's HOME funds application and the subsequent issuance of a commitment letter to FHDC for those HOME funds, and the issuance of the appropriate building permit for the work.

With LCI's cooperation, rehabilitation could begin even sooner than demolition could begin, given that all the necessary prerequisites for rehabilitation are already in place. Unlike demolition, rehabilitation would not only eliminate the blighted condition of this property, but would also save a traditional Victorian-style home *(picture attached)* that cannot and will not ever be duplicated on this site. Renovating this existing building will therefore help to keep intact some of the historic architectural fabric of the Fair Haven community, and will provide an affordable home for a low- to moderate-income family – whereas demolition will only create an empty lot. Lastly, even if FHDC's rehabilitation effort were to fail, the city could order the house's demolition at a future time – it need not do so now, just when FHDC's awaited rehabilitation work is scheduled to begin.

In your letter of 6/26/02 in which you revoke FHDC's exploratory demolition permit issued on 6/24/02, you stated that "the history of this property provides no reason to believe that action would be taken on any new permit." I believe that all of the above information demonstrates good reason to believe that FHDC will take action on a new permit, since we have in fact taken action on the previous two permits for this property and are prepared to move forward with construction immediately upon receipt of a HOME commitment letter from LCI.

Therefore, we respectfully request that you, the city's Building Official, rescind the Order to Demolish the property at 271 James Street and issue FHDC a building permit for the property, and that LCI complete the processing of FHDC's HOME application and issue a commitment letter for the HOME funds for this property, so as to allow FHDC to move forward with the immediate and complete rehabilitation of 271 James Street.

Sincerely,

Harvey Edelstein
CEO/Director of Operations – FHDC

cc: Mayor John DeStefano, Jr. – City of New Haven
 Mr. Thomas Ude, Corporation Counsel – City of New Haven
 Attorney John Williams

# FAIR HAVEN DEVELOPMENT CORPORATION 

July 18, 2002

Mr. Andrew J. Rizzo, Jr., Interim Executive Director
Livable City Initiative – City of New Haven
165 Church Street, 3rd Floor
New Haven, CT 06510 – FAX: 946-4899

**LCI**

**JUL 1 8 2002**

**RECEIVED**

Re:   Attachments to FHDC Letter of 7/18/02

Dear Mr. Rizzo:

Here are the attachments referenced in our letter of 7/18/02, which we neglected to include with your copy.

We apologize for this unfortunate oversight.

Sincerely,

*[signature]*

James R. Welter II
Executive Director – FHDC

cc: file

# FAIR HAVEN DEVELOPMENT CORPORATION 

## RECENT FHDC ACTIVITIES AS OF 6/24/02

- **FHDC Offices:** Since April 15, 2002, FHDC has owned the building at 153 Lloyd Street! We will be pursuing private rehabilitation funding for this building soon.

1. **Homeownership Education**

   - **Homeownership Training:** there are currently approximately 100 families that have completed FHDC homeownership training. Fifteen (15) completed our most recent set of homeownership workshops, which began January 17th and ended February 14th, 2002, and an additional workshop is being planned for August.

   - **Homeownership Follow-up** continues with follow-up calls and consulting with individual families, as does training of current staff and identifying and working with those families that are ready to proceed.

   - Working relationship with mortgage/real estate professionals for referrals has begun and is ongoing.

   - A recent list of available homes for sale was prepared and shared with potential homeowners.

2. **Housing Acquisition and Rehabilitation**

   The following vacant buildings have been targeted under FHDC's Housing Acquisition and Rehabilitation program. Wherever possible, a match will be made between the targeted homes and the potential homeowner.

   - Construction continues on 142 and 182 Lloyd Street. Rehabilitation drawings and specifications, public bidding, contractor selection, and contract signing were all previously completed; construction work began approximately 3 months ago and will be complete within the next few weeks. Potential homebuyers were identified from our homeownership education workshops; both 142 and 182 are under contract for sale to qualified homebuyers.

   - The second development for 2002 is composed of properties that FHDC has acquired or will acquire within the next few weeks, including properties at **260 James Street, 271 James Street, and 221 Lloyd Street.** Two of these properties have been acquired and we will soon close on the third; applications are pending for predevelopment/project funds from the city and construction financing from other sources. Drawings and specifications for these properties are complete and potential homebuyers for two of these properties have been identified and contracts have been signed; follow-up with those potential buyers is underway.

   - The third development for 2002 is composed of properties that are currently owned by the City of New Haven, and for which FHDC has formal purchase applications pending. This project includes properties at **125 Clay Street, 171 Clay Street, 350 Poplar Street, 194 James Street, 198 James Street, and others.** The city has approved FHDC's purchase of four of these properties; acquisition should occur within three to four months, and applications are pending for project funds and construction financing.

   - The fourth development for 2002 is composed of properties on which FHDC has asked the city to foreclose and which FHDC has applied to purchase, and includes the properties at **154 Lloyd Street, 139 Lloyd Street, 309 Blatchley Ave., 118/122 Lloyd St., 135 Lloyd Street, and others.** Because of the lengthy city foreclosure and conveyance processes, acquisition is expected to take eight to twelve months. Applications are being prepared and submitted for project and construction financing.

153 LLOYD STREET, NEW HAVEN, CT 06513
PHONE (203) 777-5810 • FAX (203) 777-5987

# FAIR HAVEN DEVELOPMENT CORPORATION

*Note: the above developments have also been combined for funding under an FHLB AHP application.*

- *K-8 Development Area:* covers the ten blocks bound by Grand Avenue, River, Ferry and James Street (surrounding Lloyd Street). The City of New Haven has targeted this area for intensive development to support the K-8 school and the River Street Municipal Development Plan. FHDC staff and board members are trying to meet on a regular basis with the heads of many city departments, as well as the neighborhood Aldermanic representatives, to coordinate development activities.

- *Historical Restoration/Preservation:* preliminary discussions have taken place with the New Haven Preservation Trust regarding FHDC's plans to act as developer for the restoration of **233 Blatchley Avenue**, which is the former Blatchley family home. FHDC has submitted an application to purchase this historically-significant property and plans to use historic tax credits and other financing to redevelop it into a three-family homeownership property.

3. **Potential New Construction Projects**

   - New Construction: several large empty lots are being targeted for potential new construction of two-family homes. Funding would be through the city HOME program, tax credits, AHP, and private financing.

4. **258-260 Grand Avenue development activities**

   - Since January 2, 2002, the commercial building at **258-260 Grand Avenue** has been owned by FHDC. This building will be the new headquarters for FLECHAS INC. and FHDC, as well as three units of rental housing. Design development drawings and renderings have been prepared by Svigals & Partners and other architects, and FHDC has been awarded a $15,000 grant toward Environmental Assessments from the Regional Growth Partnership, a $31,500 façade grant through the City of New Haven Department of Economic Development, and approval for $70,000 via FLECHAS for this project. FHDC has also applied for a City of New Haven HOME grant and predevelopment loan, requesting $150,000 in addition to the $70,000 in CDBG funds for renovation of the community space. Financing for the total restoration will be approximately $550,000-$600,000+ to include a community performance arts space. The remainder of the funding will be raised through a capital campaign and private mortgage financing, as well as a possible grant through the State Bonding Authority. Our plans include the formation of a Capital Campaign Committee composed of dignitaries and corporate representatives to begin intensive work in July 2002 or soon thereafter (to avoid overlapping fundraising).

5. **ELERT Program**

   - FHDC was recently awarded a grant under this program, which involves the employment of neighborhood youths in community safety and outreach activities during the summer. This program is now carrying out neighborhood clean-up and block watch organizational activities.



# FAIR HAVEN DEVELOPMENT CORPORATION

July 22, 2002

Mr. Andrew J. Rizzo, Jr., Interim Executive Director
Livable City Initiative – City of New Haven
165 Church Street, 3rd Floor
New Haven, CT 06510  -  FAX: 946-4899

Re:   Your "Evaluation/Investigation" Letter of 6/26/02

Dear Mr. Rizzo:

As you know, we received your evaluation/investigation letter dated 6/26/02. We have been reviewing the available records of FHDC in an attempt to respond to your request for information in as complete and accurate a manner as possible. Please excuse the delay in our response due to this in-depth research.

My previous letter of response addressed the issues regarding the house at 271 James Street; all of the other issues you mentioned in your letter are addressed below.

As you may know, I have been involved with FHDC since November 15, 2002, and James Welter II has been involved with FHDC since July 2000. Therefore, all information given here concerning FHDC activities prior to those dates is (and can only be) based upon our review of available FHDC records.

Your evaluation/investigation letter of 6/26/02 requests "the names of all persons to whom FHDC has sold each property as to which [sic] federal or city funds have been used and indicate their relationship, if any, to FHDC, its Board of Directors, any alderperson, or other city officials." Your evaluation/investigation letter of 6/26/02 also requests that FHDC "detail and explain any and all relationships of the FHDC Board members to any and all buyers and/or sellers and/or conveyers of any property purchased, sold or otherwise conveyed by or to FHDC, or any affiliates who have purchased, sold or conveyed property to FHDC or otherwise do business with FHDC." In response, the following information is presented in reverse chronological order of acquisition:

**271 James Street**
Acquisition: The property at 271 James Street was donated as a gift to FHDC through a QuitClaim deed on March 7, 2002, by Ms. Veronica Rodriguez. Ms. Rodriguez is the daughter of FHDC Board President Menen Osorio-Fuentes. No other relationship is known to exist between Ms. Rodriguez and FHDC, its Board of Directors, any alderperson, or other city officials.
Disposition: The property at 271 James Street is under contract signed on June 18, 2002, to be sold by FHDC to Ms. Lillie Carmon within 30 days of completion of construction. Ms. Carmon was and is a participant in FHDC's homeownership education program, and Ms. Carmon works in the Office of the Tax Collector for the City of New Haven. No other relationship is known to exist between Ms. Carmon and FHDC, its Board of Directors, any alderperson, or other city officials.

**260 James Street**
Acquisition: The property at 260 James Street was purchased by FHDC from the U.S. Department of Housing and Urban Development (HUD) on January 14, 2002. FHDC receives various kinds of housing development funding from HUD, some of it through the City of New Haven, to be used for the purpose of developing

(handwritten margin note: "Taxes ?")

# FAIR HAVEN DEVELOPMENT CORPORATION 

---

affordable housing. No other relationship is known to exist between HUD and FHDC, its Board of Directors, any alderperson, or other city officials.
**Disposition:** The property at 260 James Street is under contract signed on June 17, 2002, to be sold by FHDC to Mr. Rolando Gonzales within 30 days of completion of construction. Mr. Gonzales was and is a participant in FHDC's homeownership education program. No other relationship is known to exist between Mr. Gonzales and FHDC, its Board of Directors, any alderperson, or other city officials.

### 182 Lloyd Street
**Acquisition:** The property at 182 Lloyd Street was acquired by FHDC from the City of New Haven on August 13, 2001. Menen Osorio-Fuentes is FHDC's Board President and works for the Workforce Development Board of the City of New Haven. No other relationship is known to exist between Ms. Osorio-Fuentes and FHDC, its Board of Directors, any alderperson, or other city officials.
**Disposition:** The property at 182 Lloyd Street is under contract signed on May 17, 2002, to be sold by FHDC to Mr. Steven Parker within 30 days of completion of construction. Mr. Parker was and is a participant in FHDC's homeownership education program. No other relationship is known to exist between Mr. Parker and FHDC, its Board of Directors, any alderperson, or other city officials.

### 142 Lloyd Street
**Acquisition:** The property at 142 Lloyd Street was acquired by FHDC on February 1, 2001, through a public auction held as a result of a Judgment of Foreclosure by Sale by the Superior Court/Judicial District of New Haven, with Attorney Jeffrey P. Macarz acting as Committee. No other relationship is known to exist between either Attorney Macarz or the Superior Court/Judicial District of New Haven and FHDC, its Board of Directors, any alderperson, or other city officials (except for the fact that all these entities fall within that Judicial District).
**Disposition:** The property at 142 Lloyd Street is under contract signed on March 7, 2002, to be sold by FHDC to Ms. Theresa Ervin within 30 days of completion of construction. Ms. Ervin was and is a participant in FHDC's homeownership education program. No other relationship is known to exist between Ms. Ervin and FHDC, its Board of Directors, any alderperson, or other city officials.

### 152 Lloyd Street
**Acquisition:** The property at 152 Lloyd Street was purchased by FHDC from People's Bank on June 21, 2000. People's Bank later provided financing to the homebuyer for the purchase of this property from FHDC, and is likely to provide financing to the homebuyer for the purchase of 142 Lloyd Street from FHDC. People's Bank is also providing training and technical assistance to FHDC staff at no charge, as an in-kind donation to the organization. No other relationship is known to exist between People's Bank and FHDC, its Board of Directors, any alderperson, or other city officials.
**Disposition:** The property at 152 Lloyd Street was sold by FHDC to Mr. Angel Santiago on January 30, 2002. Mr. Santiago was and is a participant in FHDC's homeownership education program. There was a soft-second mortgage through the City of New Haven's UDAG program attached to this purchase and signed for by Mayor DeStefano on January 18, 2002. No other relationship is known to exist between Mr. Santiago and FHDC, its Board of Directors, any alderperson, or other city officials

### 175 Lloyd Street
**Acquisition:** FHDC records indicate that, on or about May 18, 1998, a contract was signed with People's Bank to purchase the property located at 175 Lloyd Street. FHDC records likewise indicate that FHDC purchased this property on or about September 1998.

# FAIR HAVEN DEVELOPMENT CORPORATION

**Disposition:** Available FHDC records indicate that, on or about October 2, 1998, the property at 175 Lloyd Street was sold by FHDC to Ms. Yolanda Nieves Parrilla, daughter of FHDC Board President Menen Osorio-Fuentes, and that there was a soft-second mortgage through the City of New Haven's UDAG program attached to that purchase and signed for by Mayor DeStefano on or about September 30, 1998 *(see attachment)*. An FHDC board resolution authorizing this sale was signed by FHDC's board members – but <u>not</u> by the Board President, who abstained from voting on and signing that resolution. *(see attachment)*. No other relationship is known to exist between Ms. Parrilla and FHDC, its Board of Directors, any alderperson, or other city officials.

No relationships other than those indicated above are known to exist between any FHDC board member and any of the above homebuyers. No relationships other than those indicated above are known to exist between any buyers and/or sellers and/or conveyers of any property and FHDC, its Board of Directors, any alderperson, or other city officials.

Your evaluation/investigation letter of 6/26/02 also requests "a breakdown of FHDC's expenditures of city-provided funding, such as administrative costs and planning versus actual development."

That information is already on file at LCI in the form of CDBG application budgets, CDBG drawdown forms, and FHDC's annual audited financial statements, all of which have been previously submitted to LCI by FHDC. I respectfully refer you to those documents for such a breakdown.

Your evaluation/investigation letter of 6/26/02 also requests "an explanation of telephone bills submitted by FHDC to LCI for payment with city funding, which have included large numbers of out-of-state long distance calls, including many calls to Puerto Rico."

In the process of carrying out its city-approved housing and community development work, it is necessary for FHDC to make numerous telephone calls to funders, agencies, associates, etc. – some of whom are located in this state, and some of whom are located outside this state (for example, HUD or the Federal Home Loan Bank, and the National Puerto Rican Coalition). The cost of such telephone calls, since they are related to and necessary for FHDC's CDBG-funded activities, would seem to be eligible for reimbursement from CDBG funds, as is any other project-related expense (and certainly no city auditor or administrator has ever informed FHDC to the contrary, despite the city's ongoing and multiple reviews of the drawdowns, documentation, and records which contain and/or refer to the bills you mention). Admittedly, this is only a general answer – but since you do not mention which specific bills or calls you are referring to, it is impossible for us to assess or confirm the CDBG eligibility of whichever specific bills or calls you are referring to, nor do we claim to be doing so. Even so, we would be happy to review our records in an attempt to ascertain whether or not any errors in billing or reimbursement may have occurred at any point, and FHDC will immediately make all appropriate corrections and restitution if any such errors are discovered or are brought to our attention.

Please understand that, in all cases, FHDC has always sought to properly comply with all applicable regulations and agreements pertaining to the use of the federal funds it handles, and that FHDC likewise seeks to do so now. For this reason – as we have done in the past – we request that: (a) your office, as the administrating entity, notify us if the above, or any other, FHDC practices are not in compliance with the appropriate regulations and/or agreements governing the use of the pertinent city/federal funds, and (b) your office likewise notify us, in any such case, as to what the pertinent regulations and/or agreements require, and what actions or remedies should be implemented so as to bring FHDC into compliance with those regulations and agreements, and we at FHDC will immediately carry out the necessary actions and/or remedies so as to come into and maintain compliance with those regulations and agreements.



# FAIR HAVEN DEVELOPMENT CORPORATION

Your evaluation/investigation letter of 6/26/02 also requests that FHDC "explain the relationship between FHDC and FLECHAS, including their respective office locations and employees."

FHDC and FLECHAS are two separate non-profit, 501(c)(3) corporations with separate missions and activities. The two corporations are collaborating, according to the terms of a Memorandum of Understanding included with FLECHAS' most recent city CDBG funding application, to rehabilitate the building at 260 Grand Avenue and create a cultural arts center, offices, and three rental housing units in that building. The offices of FHDC are currently located at 153 Lloyd Street, 1st floor, and the offices of FLECHAS are currently located at 153 Lloyd Street, 2nd floor. FHDC owns the building at 153 Lloyd Street and rents the 2nd floor and use of the facilities to FLECHAS, as a service to that non-profit organization. As you know, I am providing services to both FHDC and FLECHAS on a consultant contract basis; the two organizations have no other employees in common.

If you have any further questions or need further information, please feel free to contact us. We look forward to the swift completion of your "evaluation/investigation"; we request that you make the results available to us when your review is completed and that you resume the timely processing of FHDC's applications for city funding and properties as soon as possible.

Sincerely,

Harvey Edelstein
CEO/Director of Operations – FHDC

cc: Mayor John DeStefano, Jr. – City of New Haven
   Attorney Thomas Ude, Corporation Counsel – City of New Haven
   Attorney John Williams
   Henry Fernandez, Economic Development Administrator
   Nick Torneo, Director – LCI Property Division
   Joseph Cappucci, Fire Marshall – City of New Haven
   Robert Cleto, Demolition Officer – LCI
   Karyn Gilvarg, A.I.A., Director – City Plan
   Frank D'Amore, Acting Deputy – LCI Neighborhood Services Division
   Albert E. Kucas, Director of Legislative Services – City of New Haven
   City/Town Clerk
   Attorney General Richard Blumenthal – State of Connecticut
   Cythia Watts-Elder, Executive Director – State Commission on Human Rights and Opportunities [fair hsg.]
   FHDC Board of Directors
   The Honorable Jorge Perez, President – New Haven Board of Aldermen
   The Honorable Raul Avila, Alderman, D-16
   The Honorable Kevin Diaz, Alderman, D-15
   The Honorable Robin Kroogman, Alderwoman, D-14
   James Abromaitis, Commissioner – State Department of Economic and Community Development (DECD)
   Diane Smith, Executive Director of Community and Housing Development – State Department of Economic and Community Development (DECD)
   Secretary Mel Martinez – HUD (Washington, DC)
   Diana Ortiz, Deputy Assistant Secretary – Fair Housing Enforcement – HUD
   Engram Lloyd, Director – Regional HUD Homeownership Center (Philadelphia, PA)
   Julie Fagan, State Field Office Director – HUD (Hartford, CT)
   Andrew J. O'Keefe and Mitchell W. Pearlman – State Freedom of Information Commission
   Manuel Mirabel, CEO/Executive Director – National Puerto Rican Coalition (Washington, DC)
   Irene Packer, Senior V. P. for Community Development – Natl. Puerto Rican Coalition (Washington, DC)
   James R. Welter II, Executive Director – FHDC

# FAIR HAVEN DEVELOPMENT CORPORATION



OCT 11 2002

RECEIVED

October 10, 2002

Mr. Andrew J. Rizzo, Jr., Interim Executive Director
Livable City Initiative – City of New Haven
165 Church Street, 3rd Floor
New Haven, CT 06510

HAND-DELIVERED AND BY FAX BY: 946-4899

Re:   Your "Evaluation/Investigation" Letter of 9/27/02

Dear Mr. Rizzo:

We at FHDC are in receipt of your "evaluation/investigation" letter of the above date, which was delivered to our offices via certified mail on 10/2/02.

We are responding to the above-mentioned letter under protest, for the following reasons: at no time during the six months that this "evaluation/investigation" has been underway has the city/LCI presented any evidence of material malfeasance, wrongdoing, or impropriety on FHDC's part, nor otherwise shown any evidence or cause which would justify or form a reasonable or legitimate basis for instituting this "investigation" in the first place, nor otherwise shown any reasonable or legitimate justification for its action of stopping the processing of FHDC's applications and attempting to withhold and withdraw city property commitments. At no time during this period has the city/LCI ever made any kind of charge or accusation against FHDC, nor has it shown any reasonable cause to believe that FHDC has engaged in any kind of misconduct. Nevertheless, FHDC has cooperated fully with this "investigation" and will continue to do so.

FHDC therefore responds to your above-mentioned letter as follows:

We have reviewed the available records of FHDC in an attempt to respond to your request for further information in as complete and accurate a manner as possible. As you may know, I have been involved with FHDC since November 15, 2002, and James Welter II has been involved with FHDC since July 2000. Therefore, all information given concerning FHDC activities prior to those dates is (and can only be) based upon our review of available FHDC records. The issues you mentioned in your letter are addressed below:

- In response to Paragraph #2 of your evaluation/investigation letter of 9/27/02:

FHDC took title to the property at 271 James Street from Ms. Veronica Rodriguez via a QuitClaim Deed dated March 7, 2002; that deed was recorded by the City Clerk's office on April 4, 2002, at 2:16 p.m. As of March 20, 2002, there were outstanding city taxes due on the property in the amount of $4,645.83 – a liability that FHDC assumed along with ownership of the property. (Based upon market values and the prices of similarly-vacant properties that have been auctioned and sold by the city during the past six months, and based upon the city's own assessment of the property in question at the time of acquisition [$28,960], Ms. Rodriguez' donation of this property to FHDC constitutes a value of at least $24,314.17 to FHDC. Recently, vacant and blighted properties in similar condition have sold or been sold for more than $60,000, and the city's updated assessment of the property in question is greater than $41,000.) FHDC has made payments against the outstanding tax liability on this property since that time, using its own private funds. No CDBG or other federal or government funds have been involved in the acquisition/donation or tax payments for this property.

# FAIR HAVEN DEVELOPMENT CORPORATION

- In response to Paragraph #3 of your evaluation/investigation letter of 9/27/02:

As stated in our previous letter of 7/22/02, the property at 152 Lloyd Street was sold by FHDC to Mr. Angel Santiago on January 30, 2002. Mr. Santiago was and is a participant in FHDC's homeownership education program. There was a soft-second mortgage through the City of New Haven's UDAG program attached to this purchase and signed for by Mayor DeStefano on January 18, 2002. No other relationship is known to exist between Mr. Santiago and FHDC, its Board of Directors, any alderperson, or other city officials; no other relationship is known to exist between Mr. Santiago's wife, children, and/or parents (if they are still alive), and FHDC, its Board of Directors, any alderperson, or other city officials.

- In response to Paragraph #4 of your evaluation/investigation letter of 9/27/02:

Attached are all available minutes from FHDC Board Meetings from May 1998 to the present. (Some of FHDC records were seized by the federal government in 1998 as part of the FBI's investigation into alleged City of New Haven staff corruption, and those records have never been returned; consequently, no minutes are available for Board Meetings before May 2000.) Be advised that, as is the case with many small community organizations, the regular business of FHDC is carried out mostly by officers and staff, with a minimum number of formal Board Meetings during the year, although FHDC's board members are also kept informed via telephone, informal meetings, and correspondence. Therefore, we believe that FHDC's financial and programmatic records already on file with the city of New Haven represent a more accurate and complete record of FHDC's organizational activities than the minutes from FHDC's Board Meetings do.

- In response to Paragraph #5 of your evaluation/investigation letter of 9/27/02:

We at FHDC are awaiting the notification you mention and we will cooperate with the Controller's Office in every way possible. Please note, however, that FHDC has already been audited, monitored, and reviewed for financial and programmatic compliance many times by the city Controller's Office, by HUD representatives, and by other entities (including your own [LCI] office), and has carried out its own independent audits and submitted them for city/LCI for review as well – and <u>no significant problems have ever been found</u>. It is therefore difficult to see what valid purpose another (publicly-funded) city audit will serve. In the absence of such a purpose, we respectfully suggest that enough public (and private) funds have been expended auditing and examining the records of FHDC, and urge that such resources be used for more constructive purposes.

- In response to Paragraph #6 of your evaluation/investigation letter of 9/27/02:

Copies of the telephone bills you mention are already on file at LCI, as attachments to the associated CDBG drawdown forms that were previously submitted to LCI by FHDC; we respectfully refer you to those documents. As we stated in our previous letter of 7/22/02, we are reviewing our records in an attempt to ascertain whether any errors in telephone billing or reimbursement may have occurred at any point, and we are making the appropriate corrections and restitution: we have discovered that some calls/charges on some of the telephone bills submitted by FHDC for CDBG reimbursement appear to have been included erroneously; FHDC regrets this minor oversight. We have singled out all questionable calls/charges (including those related to Puerto Rico), and have submitted an invoice for the appropriate amount to FLECHAS, which was apparently responsible for those calls *(please see attachments)*; upon payment of this invoice, FHDC will reallocate this



# FAIR HAVEN DEVELOPMENT CORPORATION

amount toward its previously-unreimbursed CDBG-eligible expenses or else, upon written request, will return this amount to the city. As indicated in our previous letter of 7/22/02, FHDC will immediately make all other appropriate corrections and restitution if any further apparent billing or reimbursement errors are discovered or are brought to our attention.

- In response to Paragraph #7 of your evaluation/investigation letter of 9/27/02:

The documentation you request is already on file at LCI, as attachments to the associated CDBG drawdown forms, and as part of FHDC's CDBG application and the associated materials submitted under the city's "Checklist for CDBG Third Party Agreements," all of which have been previously submitted to LCI by FHDC. A description of FHDC's bidding process for CDBG-funded expenses can also be found included in the materials submitted under the city's "Checklist for CDBG Third Party Agreements." (Please note that, although my letter of engagement appears in those materials, no consultant fees for my services have ever been paid with CDBG funds.) We respectfully refer you to those documents.

- In response to Paragraph #8 of your evaluation/investigation letter of 9/27/02:

Any duties that the employees of FHDC have ever performed for FLECHAS have been performed by those employees on their own time (be it vacation time, comp time, or during off-work hours), and no such employees have ever received any compensation from FHDC for any such duties they may have performed. FHDC and FLECHAS share a single telephone system common to the building at 153 Lloyd Street, which is owned by FHDC and was purchased using private funds; FHDC also occasionally allows FLECHAS the use of its photocopier and postage meter. As indicated above, FLECHAS is billed by FHDC for any equipment usage charges thus incurred. To the best of our knowledge and belief, no non-programmatic fundraising has ever been carried out or allowed by FHDC at its offices or using its equipment. Because FHDC is not a political organization, any political activities that FHDC employees have ever engaged in (including assisting in campaigns) have been carried out by those employees on their own time (be it vacation time, comp time, or during off-work hours); they have never received any compensation from FHDC for any such activities they may have engaged in, and to the best of our knowledge and belief, no FHDC office space or equipment has ever been used for any purpose in any political campaign.

- In general response to your evaluation/investigation letter of 9/27/02:

Be advised that, to the best of our knowledge and belief, FHDC has never intentionally engaged in any misuse of federal funds; rather, in all cases, FHDC has always sought to properly comply with all applicable regulations and agreements pertaining to the use of the federal funds it handles, and FHDC likewise seeks to do so now. For this reason – as we have done in the past, most recently in our previous letter of 7/22/02 – we request that: (a) your office, as the administrating entity, notify us if the above, or any other, FHDC practices are not in compliance with the appropriate regulations and/or agreements governing the use of the pertinent city/federal funds, and (b) your office likewise notify us, in any such case, as to what the pertinent regulations and/or agreements require, and what actions or remedies should be implemented so as to bring FHDC into compliance with those regulations and agreements, and we at FHDC will immediately carry out the necessary actions and/or remedies so as to come into and maintain compliance with those regulations and agreements.

# FAIR HAVEN DEVELOPMENT CORPORATION 

Be likewise advised that, to the best of our knowledge and belief, FHDC has not engaged in any improper programmatic or business practices, nor has it violated any laws, rules, or regulations applicable to its activities, nor has it allowed any of its associates to improperly benefit in any way from its activities – and, to the best of our knowledge and belief, <u>all of the above facts are supported by the results of every audit, monitoring, and review that any entity has ever carried out in connection with FHDC</u>. The results of most of these audits, monitorings, and reviews are already on file with the city/LCI.

Nevertheless, for the past six months, as noted above, FHDC has fully cooperated in every way with the city/LCI's "evaluation/investigation" (despite our misgivings) and has answered all of the questions you have put forward in connection with same – and to the best of our knowledge and belief, absolutely <u>no</u> violations or improprieties of any kind have yet been discovered or charged against FHDC. The reason for this is simply that (to the best of our knowledge and belief) <u>no violations or improprieties have been committed</u>, and this ongoing search for violations or improprieties is a waste of everyone's time and resources.

Therefore, in accordance with our legal right to a presumption of innocence, we respectfully insist that your office draw this lengthy "evaluation/investigation" to a close and resume the timely processing of FHDC's applications for city funding and properties, so that our organization can continue developing affordable homeownership opportunities for the low- to moderate-income residents of the Fair Haven neighborhood.

Sincerely,

Harvey Edelstein
CEO/Director of Operations – FHDC

cc:  FHDC Board of Directors
     Attorney General Richard Blumenthal – State of Connecticut
     Justin Kronholm, Assistant to the Attorney General – State of Connecticut
     Mayor John DeStefano, Jr. – City of New Haven
     Attorney Thomas Ude, Corporation Counsel – City of New Haven
     Attorney Tom Crosby
     Attorney John Williams
     Henry Fernandez, Economic Development Administrator
     The Honorable Jorge Perez, President – New Haven Board of Aldermen
     The Honorable Raul Avila, Alderman, D-16
     The Honorable Kevin Diaz, Alderman, D-15
     James Abromaitis, Commissioner – State Department of Economic and Community Development (DECD)
     Diane Smith, Executive Director of Community and Housing Development – (DECD)
     Secretary Mel Martinez – HUD (Washington, DC)
     Herb Goldblatt, Assistant General Counsel for Enforcement – HUD (Washington, DC)
     Engram Lloyd, Director – Regional HUD Homeownership Center (Philadelphia, PA)
     Julie Fagan, State Field Office Director – HUD (Hartford, CT)
     Cythia Watts-Elder, Executive Director – State Commission on Human Rights and Opportunities [fair hsg.]
     Andrew J. O'Keefe and Mitchell W. Pearlman – State Freedom of Information Commission
     James R. Welter II, Executive Director – FHDC
     Wendy Clarke, Frank D'Amore, and Janice Dipollina, LCI
     Joseph Cappucci, Fire Marshall – City of New Haven
     Robert Cleto, Demolition Officer – LCI
     Karyn Gilvarg, A.I.A., Director – City Plan
     Albert E. Lucas, Director of Legislative Services – City of New Haven
     file