# EXHIBIT 12

CASE NO: CV 03-0480003S : SUPERIOR COURT

FAIR HAVEN DEVELOPMENT CORP.: JUDICIAL DISTRICT OF NEW HAVEN

VS. : AT NEW HAVEN

CITY OF NEW HAVEN : OCTOBER 4, 2005

B E F O R E: HONORABLE WILLIAM L. HADDEN, JR.

A P P E A R A N C E S:

REPRESENTING THE PLAINTIFF:

SUSAN V. WALLACE, ESQUIRE

REPRESENTING THE DEFENDANT:

RODGER W. LEHR, JR., ESQUIRE

A N D R E W R I Z Z O,

having been previously sworn, was further examined and testified as follows:

THE COURT: Mr. Rizzo, do you want to get back on the stand. I guess you were about to start cross-examination, counsel.

MS. WALLACE: Yes, your Honor. I just need some of the exhibits, your Honor. I'll just need some of the exhibits. I understand that they were just brought out.

CROSS-EXAMINATION BY MS. WALLACE:

Q Good morning, Mr. Rizzo.
A Good morning.
Q Mr. Rizzo, I'm going to show you what's been marked Plaintiff's Exhibit 21-A and Plaintiff's Exhibit 1. Do you recognize what these are?
A Yes.
Q What are they?
A Pictures of the building in question.
Q Okay. Which one represents the way the building looks today, the closest to the way the building looks today?
A The one with the flags.
Q The one -- the one that's Exhibit 1?
A Yes.
Q Okay. Who did the changes between the -- what's represented in 21-A and one?
A To the best of my knowledge, the plaintiffs.

one of the units was sold to the daughter of the president of the board of FHDC?

A Yes. Excuse me. Yes. I believe the building was sold to the daughter, not one of the units, the building was.

Q Is the daughter continuing to comply with all the provisions of the grants and tax relief and whatever else is applied to this building in terms of being an owner occupant?

A I don't know that for sure. I would hope so. I would think so.

Q Okay. Was there anything that actually was found by anybody to violate the law in the sale of this property to the adult daughter of one of the board members?

A At the time, I don't think it was a question of violation of law. That would be left to my legal staff.

Q What was questionable about it then?

A What was questionable was the fact that over a period of at least five years, that the City gave 600,000 -- $620,000 I believe, in CDBG funds to F -- Fair Haven Development. Only one house was rehabilitated, and that one house was sold to the daughter of a board member, and if I'm not mistaken, I would have to review my notes, but I believe it was sold at a cost per unit, relatively less than what other properties had sold for.

Q Did you ever take any action about that?

A Only as part of my final determination of the investigation to discontinue funding or disposing of property to Fair Haven Development Corporation.

Q Now, all of this information that you cited in these determinations, was all of this information known to -- in some way known to you or your office before December 2001?

A I have no idea of knowing that.

Q Well, in fact, all of these --

A I wasn't part of that office.

Q All these events occurred --

MR. LEHR: I --

MS. WALLACE: I apologize.

THE COURT: Did you finish your answer?

MR. RIZZO: I was saying, your Honor, that I was not the director then, and therefore, I would not have any knowledge of whether or not that department, LCI, the director's position knew about it.

Q Were you ever an acting director before you were the director?

A I was acting director starting March 1, 2002.

Q Okay. So the date is the same?

A That is when I actually started.

Q Isn't it true, that all of these incidents that you've just recited as being possible, questionable, possible wrongdoing or misdeeds, but not anything that seems to have risen to the level of a violation of any law, that all of these things were -- in fact occurred before December 2001?

A Of the seven findings, yes, most them did.

Q Okay. So the City had been involved with monitoring this organization before December 2001 because there had been

a number of years in which the City was giving grants and conveying properties to this organization; is that correct?

A Yes. To the best of my knowledge.

Q Is there any other way that this organization could of gotten any monies to rehab the buildings, any government monies besides going through the LCI office?

A Oh, they could have gotten money from several other sources, sure.

Q I don't mean private sources. I mean money from government sources.

A I don't know the answer to that question. I don't know that there might be other sources. I just know that through the City we distribute CDBG funds, several other funds that they could of made -- been available to them.

Q Okay. So funds that come from the City go through the City's office, the LCI office; correct?

A Correct.

Q Funds that come from the Federal Government slash HUD come through your office?

A Correct.

Q And in order to be able to petition the State of Connecticut to get certain housing redevelopment funds, they have to be recommended by the City of New Haven; isn't that correct?

A They have to be approved.

Q Okay. So again, it goes through the City of New Haven in some fashion?

A It goes through the process, yes.

Q Okay. And the City of New Haven in fact never took any action against FHDC until you decided to do this in what month and what year?

A First of --

MR. LEHR: Well, I'm going to object to the form.

THE COURT: Object to the characterization that he decided to do this. My recollection is, I believe, that he had inquiries from members of the Board of Aldermen.

MR. RIZZO: Correct.

THE COURT: Specifically a written request from Alderman Kroogman, which is part of Exhibit F, and I gather some verbal requests from other aldermen, alderpersons you mentioned.

MR. RIZZO: That's correct, your Honor. Yes.

Q Okay. When did the request come in, the earliest request come in for you to do something to investigate or audit my client?

A It was in a conversation that I had with three alderpeople in May of 2002.

Q May of 2002?

A Yes.

Q In May of 2002, didn't they just award my client a substantial amount of grant funds?

A I'm not sure what the exact date was. I know there was an award, but I don't know the exact date.

New Haven regulations?

A The New Haven regulations reflecting the federal regulations.

Q Okay. What New Haven regulations are these that you claim were violated by some sharing between FLECHAS and FHDC, that you claim was the basis for your investigation in not giving the money out?

MR. LEHR: Well, objection.

THE COURT: Objection to the form of the question. It's a convoluted question, counsel.

Q These regulations you claim -- Is your testimony that these regulations of the City of New Haven were violated by some conduct of FLECHAS and FHDC with regard to funding?

A Yes.

Q And are you claiming that those violations were the basis for your investigation?

A No.

Q Are you claiming that those violations were the basis for your not allowing the monies to be actually paid over to the two organizations?

A No.

Q That being those two grants that we've been referring to?

A No.

Q So the violations were not the reason that the monies weren't given out?

A You imply that only the violations were the reason. If

that's the question, the answer is no.

Q Okay. Were the violations in any way, in part or in whole, the reason for the funds not being paid over to the two organizations?

A As a part of the whole, yes.

Q So the answer is yes?

A As a part of the whole, yes.

Q What other reasons were there besides what you claim to be violations of regulations of the City of New Haven for the failure or refusal of the City of New Haven to pay the funds over to the two organization?

MR. LEHR: I'm going to object. This is completely repetitive. We went through the seven determinations and findings on the last page of the report. The report is in the evidence. I mean, how many times are we going to go over the same ground?

MS. WALLACE: No. He keeps claiming -- He keeps making statements that there's more and there's other and it's only a part, and I want to be very clear about this.

THE COURT: Well, wait a minute, counsel. Counsel, I grasp his testimony as saying that the violation of these regulations in connection with the sharing of expenses and employees was part of the reason for his cutting off the funding.

MS. WALLACE: Yes. And I meant --

THE COURT: That's what he said.

MS. WALLACE: Yes. I know.

THE COURT: And you've already -- Haven't you already gone over all of these reasons with him?

MS. WALLACE: No. He's never gotten to the rest of the reasons. I'm asking him what the rest of the reasons are.

THE COURT: Then go ahead if you claim you've got other things you want to bring out.

Q What are the --

THE COURT: It sounds repetitive to me.

Q What are the other reasons besides those particular violations? Okay. What are the other reasons that the money wasn't paid over to these two organizations?

A Those reasons --

Q The money being grants that we referred to again.

A Those reasons are outlined in the seven conclusions of my report. If I could have the report, I'd be more than happy to read them to you.

Q Okay. So those -- That's -- This is the sum and substance of it? Those are the only reasons? Okay. Right?

A As they -- Yes, as they relate to the investigation.

Q Okay. Now, you didn't have those reasons substantiated until the time you issued your report, correct, or shortly before then; correct?

A That's correct.

Q Okay. You conducted a long and -- a long and thorough investigation first?

CASE NO: CV 03-0480003S : SUPERIOR COURT

FAIR HAVEN DEVELOPMENT CORP.: JUDICIAL DISTRICT OF NEW HAVEN

VS. : AT NEW HAVEN

CITY OF NEW HAVEN : OCTOBER 4, 2005

C E R T I F I C A T E

This is to certify that the foregoing is a true and accurate transcript of the above-entitled matter, electronically recorded by me, heard in the Superior Court, 235 Church Street, New Haven, Connecticut, before the Honorable William L. Hadden, Jr.

This certification page is invalid if it does not contain an original signature.

Dated at New Haven, Connecticut, this 30th day of March, 2005.

Christine Bachman

CHRISTINE BACHMAN

COURT MONITOR