## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
--------------------------x
                          :
FAIR HAVEN DEVELOPMENT    :
CORPORATION,              :
                          :
         Plaintiff,       :
                          :
v.                        :    Civil No.3:02CV02130(AWT)
                          :
JOHN DESTEFANO, et al.,   :
                          :
         Defendants.      :
                          :
--------------------------x
```

### <u>RULING ON MOTION FOR SUMMARY JUDGMENT</u>

Fair Haven Development Corporation ("FHDC") brings this action against Mayor John DeStefano ("DeStefano"), Julio Gonzalez ("Gonzalez"), Andrew Rizzo, Jr. ("Rizzo") and the City of New Haven ("New Haven"). The complaint sets forth claims pursuant to 42 U.S.C. § 1983 for alleged violations of FHDC's procedural and substantive due process rights, equal protection rights, and First Amendment rights to freedom of speech and freedom of association. The defendants have moved for summary judgment on all claims. For the reasons set forth below, the defendants' motion is being granted.

## I.   FACTUAL BACKGROUND

FHDC is a Connecticut non-profit corporation that rehabilitates urban housing stock in order to create affordable housing in the Fair Haven section of New Haven. Funds for its projects were provided by federal Community Development Block Grant ("CDBG")funds administered by the U.S. Department of

-1-

Housing and Urban Development ("HUD") and New Haven through the Liveable City Initiative ("LCI").  Receipt of program funds was contingent on the FHDC entering into a valid contract with New Haven.

In May 2002, FHDC and Mutual Housing Association, another housing developer, were competing for a large multi-family housing development project being considered by the New Haven Board of Aldermen.  Alderman Raul Avila, a member of FHDC's Advisory Board, voiced his support for FHDC's application.  Avila claims that, before a final vote on the proposal, Rizzo, the interim director of LCI, and Gonzalez, the mayor's executive assistant, approached FDHC's CEO and Director of Operations Harvey Edelstein.  He further claims that Edelstein was advised to end Avila's support for the FHDC proposal, or "FHDC might find it difficult to move ahead with their other projects."  (Avila Aff., Ex. 1, ¶ 9).  Later that month, Rizzo received a request from Alderpersons Robin Kroogman, Edward Mattison, and Juan Candelaria to investigate the business operations of FHDC.  Rizzo began the investigation just days before receiving a written request from Kroogman to do so in a letter dated June 5, 2002.

During the course of the investigation, Rizzo requested financial statements, telephone records, audit reports, documentation of property transfers, and information regarding conflicts of interest.  FHDC responded to Rizzo's requests by

asserting that the investigation was not justified by any
wrongdoing or impropriety on FHDC's part.  In response to some
requests for information, FHDC either directed Rizzo to records
previously submitted to LCI or informed Rizzo that FHDC was
unable to obtain it.

On September 27, 2002, Rizzo requested that an audit for
the 2000-2001 fiscal year be performed by the New Haven
Controller's office.[1]  The purpose of the audit was to determine
if FHDC was meeting its contractual obligations, using city funds
appropriately, and working in compliance with the city's housing
initiative objective.  The audit was overseen by Kevin Berry, the
Projects Coordinator for the New Haven Controller's office.  The
audit revealed that FHDC was over-budget and that program funds
had been improperly spent on overhead expenses.  It also revealed
that, between 1995 and 2003, four properties had been
rehabilitated with an average completion rate of 583 days per
property.

Rizzo issued a six-page report setting forth the findings
from the investigation, including the information from the audit

---

[1]  Although FHDC was awarded a grant on May 31, 2002, it had
not yet submitted an external audit for the 2000-2001 fiscal year
in accordance with the requirements of FHDC's contract. On the
same day FHDC was awarded its grant for the 2002-2003 fiscal
year, Henry Fernandez, Economic Development Administrator for New
Haven, issued a memorandum to all CDBG funded organizations,
alerting them to the city's increased diligence in monitoring
programs and that suspension of funding would be a sanction for
noncompliance.

by the Controller's Office, in the form of a letter to FHDC dated February 6, 2003. The letter set forth several areas of concern, including the amount of city funds used per house, the completion rate of FHDC projects, the delays in completion of FHDC projects, the organization's lack of support for affordable housing goals, the involvement of the board president's children in FHDC land transactions, the expenditure of CDBG funds for overhead expenses and for a non-qualifying partner organization, and FHDC's failure to cooperate with the city's investigation. Based on these deficiencies, LCI found that FHDC was an ineffective developer of quality affordable housing. The city then withheld FHDC's 2002-2003 fiscal year grant award and determined that it would no longer provide any funds to FHDC.[2]

During this time, one other CDBG recipient, the West Rock Neighborhood Corporation ("West Rock"), was the subject of a similar audit. West Rock was a day care organization that was investigated and subsequently lost its funding when it lost its state license. FHDC and West Rock were subject to audits that were similar in scope. Each was forced to produce transaction documentation, spending records, bank statements, and other

---

[2] FHDC contested LCI's findings documented in Rizzo's letter to FHDC. For example, FHDC responded to the findings concerning a conflict of interest by providing documentation, which stated that the President of the Board of Directors abstained from voting with respect to the property his daughter was to purchase. Also, FHDC had submitted an external audit for the 2001-2002 fiscal year on or about October 30, 2002.

accounting records.  The loss of the license was one of several concerns the city had about West Rock's operations.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56 (c) .  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56 (c) "mandates the entry of summary judgment...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  See Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury.  The court, therefore, may not try issues of fact.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Board of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975).  It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge."  Anderson, 477 U.S. at 255.  Thus, the trial court's task is "carefully

limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined...to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine...if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. at 248. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary

judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d
Cir. 1990).

     When reviewing the evidence on a motion for summary
judgment, the court must "assess the record in the light most
favorable to the non-movant and...draw all reasonable inferences
in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d
Cir. 2000) (quoting Del. & Hudson Ry. Co. V. Consol. Rail Corp.,
902 F.2d 174, 177 (2d Cir. 1990)).  Because credibility is not an
issue on summary judgment, the nonmovant's evidence must be
accepted as true for purposes of the motion.  Nonetheless, the
inferences drawn in favor of the nonmovant must be supported by
the evidence.  "[M]ere speculation and conjecture" is
insufficient to defeat a motion for summary judgment. Stern v.
Trs. of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting
W. World Ins. Co. V. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir.
1990)).  Moreover, the "mere existence of a scintilla of evidence
in support of the [nonmovant's] position" will be insufficient;
there must be evidence on which a jury could "reasonably find"
for the nonmovant.  Anderson, 477 U.S. at 252.

     Finally, the nonmoving party cannot simply rest on the
allegations in its pleadings since the essence of summary
judgment is to go beyond the pleadings to determine if a genuine
issue of material fact exists.  See Celotex Corp., 477 U.S. at
324.  "Although the moving party bears the initial burden of

establishing that there are no genuine issues of material fact,"
Weinstock, 224 F.2d at 41, if the movant demonstrates an absence
of such issues, a limited burden of production shifts to the
nonmovant, which must "demonstrate more than some metaphysical
doubt as to the material facts,...[and] must come forward with
specific facts showing that there is a genuine issue for trial."
Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d
Cir. 1993) (quotation marks, citations and emphasis omitted).
Furthermore, "unsupported allegations do not create a material
issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant
fails to meet this burden, summary judgment should be granted.
The question then becomes whether there is sufficient evidence to
reasonably expect that a jury could return a verdict in favor of
the nonmoving party. See Anderson, 477 U.S. at 248, 251.

## III. DISCUSSION

### A.  Due Process Claims

#### 1.  Procedural Due Process

To prevail on a procedural due process claim, a plaintiff
must first show a deprivation of a constitutionally-protected
property or liberty interest. Narumanchi v. Board of Trustees of
Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988). The court
must then decide whether the procedures followed by the defendant
satisfied the requirements of due process. In order to have a
protected property interest in a public benefit, a plaintiff must

-8-

"have a legitimate claim of entitlement to it."    Board of

Regents v. Roth, 408 U.S. 564, 577 (1972).  "An abstract need or

desire" for the benefit or "a unilateral expectation of it" is

not sufficient.  Id.

Receipt of CDBG funds is contingent upon entering into a

valid contract with the city.  Before a contract has been

executed, there is no right to funding.  Once the contract has

been executed, recipients are notified that failure to satisfy

certain requirements can result in a re-evaluation of the funding

decision.  Because the CDBG funding decision was subject to the

discretion of certain city officers and compliance with

particular contractual provisions, FHDC did not have a legitimate

claim of entitlement to such funding, and therefore it did not

have a protected property interest.

In addition, the plaintiff's procedural due process claim

fails because it does not identify what sort of process FDHC was

denied.  See Russo v. City of Hartford, 158 F.Supp.2d 214, 232

(D. Conn. 2001) (dismissing procedural due process claim where

the plaintiff failed to "specifically allege what sort of process

[s]he was entitled to or how it was denied").  FHDC presents no

argument as to what procedure should have been substituted for

the LCI investigation in order to satisfy the requirements of due

-9-

process.[3]

## 2.   Substantive Due Process

In order to prevail on a substantive due process claim, the plaintiff must first establish the existence of a "federally protectable property right," which requires a demonstration of a clear entitlement to a benefit under state law.  Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999).  Second, the plaintiff must show that the defendant's conduct "was so outrageously arbitrary as to constitute a gross abuse of governmental authority."  Id.

For the reasons stated above, FHDC had no constitutionally-protected property interest in CDBG funding.  In addition, the plaintiff has failed to establish that any defendant's actions constituted a gross abuse of governmental authority.  Following an investigation that lasted several months, the city issued a six-page report outlining several areas of concern regarding the FHDC's performance as a housing developer.  An external audit was conducted by the staff of the New Haven Controller's office.  Rizzo maintained regular communication with FHDC throughout the process and sent the organization several letters to encourage it to participate in the investigation.  The city's decision to withhold funds from the FHDC based on the results of its

---

[3] FHDC does not even respond to the arguments set forth in the defendants' papers on the procedural and substantive due process claims.

investigation could not be found by a reasonable jury to constitute an "arbitrary action of government" or one that "shocks the conscience."  See Rochin v. California, 342 U.S. 173 172 (1952) (government action that "shocks the conscience" violates substantive due process); County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (due process requires protection from the arbitrary action of government).

**B.    Equal Protection Claims**

The Supreme Court has recognized equal protection claims brought by a "class of one" where the plaintiff alleges that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  A complaint that alleges differential treatment from similarly-situated others, in combination with an allegation that the government acted in an "irrational and wholly arbitrary" way, is "sufficient to state a claim for relief under traditional equal protection analysis." Id. at 564.  To survive a motion for summary judgment, a plaintiff must show that there was no rational basis for the unequal treatment received.  Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 500 (2nd Cir. 2002).

In order to prevail on a selective enforcement claim, a plaintiff must show differential treatment of similarly-situated

persons that was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  See LaTrieste Rest. & Cabaret v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994) (internal citation omitted).  Although these issues generally present "a question of fact properly left to the jury," it is appropriate to grant summary judgment "where the non-moving party adduces nothing more than speculation to support its claims."  Harlen, 273 F.3d at 502.

     FHDC argues that it was treated differently from other organizations that received CDBG funding because it was subjected to an investigation and its funding was withdrawn.  However, the West Rock Neighborhood Corporation, another recipient of CDBG funding, was subjected to a similar investigation.  FHDC attempts to distinguish the West Rock investigation by arguing that the evidence suggests that the West Rock investigation was prompted by West Rock's loss of its state license.  However, the only evidence is that the investigation of West Rock was prompted in part by the "city's concern of contractual violations."  (Berry Aff., Ex. 2e).  Also, the investigations of both FHDC and West Rock were similar in scope.  FHDC fails to present any evidence suggesting that there was another similarly-situated organization

that was not subjected to a similar investigation.[4]  Therefore, the plaintiff has failed to produce evidence that could establish differential treatment of similarly-situated others.

FHDC has also failed to produce evidence that could establish that there was no rational basis for treating it differently than other organizations that received CDBG funding or that the defendants' actions were based on impermissible considerations.  The initial investigation of FHDC was prompted by reports that relatives of board members were benefitting from the developer's projects.  The report of the investigation was critical of FHDC for its ineffectiveness as a housing developer and its unauthorized expenditure of federal funds, and those findings were supported by the results of the Controller's audit.  No reasonable jury could find that the decision to withhold funding based on such considerations was arbitrary or irrational or that such considerations were impermissible.

Therefore, the defendants are entitled to summary judgment on plaintiff's selective enforcement and "class of one" equal protection claims.

C.   **First Amendment Retaliation Claim**

The Second Circuit applies a three-prong test to evaluate

---

[4] FHDC's reference to an internal memorandum sent to Rizzo by Kevin Berry,  which raised the issue of investigating CDBG recipients for questionable expenses as a general policy issue is insufficient to satisfy the plaintiff's burden.

-13-

First Amendment retaliation claims. A plaintiff must establish that (1) it engaged in constitutionally protected speech on a matter of public concern, (2) it suffered an adverse action, and (3) the speech was a motivating factor in the adverse decision. Gronowski v. Spencer, 424 F.3d 285, 292 (2d Cir. 2005).

FHDC claims that it was punished for its opposition to the development of the apartment complexes in the Fair Haven neighborhood and for Avila's opposition to the Mutual Housing proposal at Board of Aldermen and committee meetings. The plaintiff points to the fact that the investigation of FHDC occurred shortly after Avila allegedly failed to heed warnings from Rizzo regarding the negative consequences of Avila's opposition to the Mutual Housing proposal. FHDC has submitted Avila's affidavit, which consists almost entirely of hearsay statements from Edelstein and Avila's conjecture that FHDC's funding was withdrawn because of his public opposition to the mayor's plan. However, FHDC "may not rely simply on conclusory allegations or speculation to avoid summary judgment." Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1992). The plaintiff has failed to produce any other evidence in support of its First Amendment retaliation claim, while the city has offered evidence demonstrating the existence of legitimate reasons for withdrawing FHDC's funding. Thus, there is no genuine issue of material fact precluding summary judgment on FHDC's First Amendment retaliation

-14-

claim.

## IV.    CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment (Doc. No. 56) is hereby GRANTED.

The Clerk shall enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated this 14th day of December 2007 at Hartford, Connecticut.

        /s/AWT        
Alvin W. Thompson
United States District Judge
